FILED
SCRANTON

MAY 0 4 2010

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT, PENNSYLVANIA

PER _____
DEPUTY CLERK

Ronald Gene Moll                    :        No: 10-955
                                    :
V.                                  :        HABEAS CORPUS
                                    :
Commonwealth of Pennsylvania,       :        Jury Trial Demanded
          et. al..

## PETITION FOR WRIT OF HABEAS CORPUS:

## I. JURISDICTION / VENUE

1.)       Jurisdiction is conferred upon this Court pursuant to Article VI, cl.2 ; Amendments 4
; 5 ; 6 ; and 14 ; 28 U.S.C. 2241, 2243, 2247, 2251, 2254(a), (b)(l)(B)(i) ; (ii) ; (e)(i) ; (e)(2)(B).

## II. PLAINTIFF

2.)       Ronald Gene Moll (hereinafter "Petitioner"), at all times relevant herein, is a prisoner
confined in the Pennsylvania Department of Corrections, currently residing at SCRF-MERCER,
801 Butler Pike, Mercer, PA. 16137.

## III. DEFENDANT(S)

3.)       Commonwealth of Pennsylvania, by and through, its Corporate Municipal
Instrumentality; Schuylkill County Court of Common Pleas, 420 North Centre Street, Pottsville,
PA. 17901; under the Principal / Agent Doctrine.

4.)       James P. Goodman, District Attorney, 401 North Second Street, Pottsville, PA.
17901; under the Principal / Agent Doctrine.

5.)       Michael A. O'Pake, Assistant District Attorney, 401 North Second Street, Pottsville,
PA. 17901; by and through, the Principal / Agent Doctrine(s).

6.)       District Court 21-3-07, by and through State Agent, James R. Riley, D.J., 200 North
Centre Street, Pottsville, PA. 19901, under the Principal / Agent Doctrine.

7.)       Shenadoah Borough, by and through, Shenadoah Police Department, Shenadoah, PA.
17976; under the Principal / Agent Doctrine.

8.)      Matthew R. Nester, State Agent, Chief of police, Shenadoah Police Department, 25 West Washington Street, Shenadoah, PA. 17976; under the Principal / Agent Doctrine.

9.)      Jamie Gennarini, State Agent, Captain of police, Shenadoah Police Department, 25 West Washington Street, Shenadoah Police Department, Shenadoah, PA. 17976; under the Principal / Agent Doctrine.

10.)      Jason Hayes, State Agent, Patrolman, Shenadoah Police Department, 25 West Washington Street, Shenadoah, PA, 17976; under the Principal / Agent Doctrine.

11.)      ALL aforementioned Defendant(s), are herein attached in their Official and Individual Capacities; under the Principal / Agent Doctrine, to include vertical privity.

## III. FACTS

12.)      On April 9, 2007, Chief Matthew Nester, S.P.D., fully executed an Affidavit of Probable, before issuing Authority James R. Riley, D.J., District Court 21-3-07; Thusly, procuring an application for a Search Warrant in violation of Franks V. Delaware 438 U.S. 154 (1978), [Exhibit's 1-1.2; 2-2.3].

13.)      On April 10, 2007, based upon the above unlawful conduct, an Arrest Warrant was issued by the above said issuing Authority, [Exhibit 3-3.2].

14.)      On April 20, 2007, a preliminary hearing to determine prime facie was to be held, continued to May 2, 2007. [Exhibit's 4-4.1].

15.)      On May 2, 2007, Chief of Police, Matthew Nester, Arresting Officer, Submitted a written request to withdrawal charges on Case Docket No. CR-78-07. The above unlawful conduct created Case Docket No. CR-77-07, as well, based upon the Original Complaint No. 123-175, with Probable cause established by the above said unlawful conduct being negated for all [Exhibit 5]

16.)      The above unlawful conduct created Schuylkill County Court of Common Pleas Criminal Docket No. CP-54-CR-669-2007, [Exhibit 7].

17.)      On July 9, 2007, Commonwealth of Pennsylvania, by and through, District Attorney James P. Goodman, vin, unknown State Agent filed a Bill of Information, based upon the above said unlawful conduct; to thereby engage in a course of Selective, vindictive, malicious prosecution outlawed under Wong Sun V. U.S., 371 U.S. 471, 487-88 (1963), [Exhibit 7-7.13, S.C.C.C.P. Crim. Dkt. No. 54-CR-669-2007, at pp. 7 of 14, Exhibit 7.6].

18.)      Between July 9, 2007 to February 27, 2008, the above Said District Attorney's office, via, unknown State Agents, employed a course of conduct in furtherance of the above unlawful conduct, by "Judge Shopping" to further its agenda under Vexatious litigation and Barratry.

utilizing evidence seized during an illegal search violating the Doctrines set forth in Boyd V. U.S., 116 U.S. 616 (1886); and Weeks V. U.S., 232 U.S. 383, 398 (1914); and Mapp V. Ohio, 367 U.S. 643, 654-55 (1961); under 4th Amend. Principals.

19.)    The Sine Qua Non, thus, the Secondary prosecution was created by the above unlawful conduct described, without seeking a Secondary Search Warrant, seizing items not listed in the Original Search Warrant in violation of Murray V. U.S., 487 U.S. 533, 542 (1988); and the knock and announce rule set forth in Wilson V. Arkansas,  514 U.S. 927, 929 (1995).

20.)    The above Sine Qua Non Prosecution as described above, incepted by and through, the Shenadoah Police misconduct, further deprived petitioner of his "Miranda Rights" under Miranda V. Arizona, 384 U.S. 436, 475 (1966); to include any type of Secondary Arrest warrant, and subsequent "Gerstein Hearing" to determine probable cause under Gertin V. Pugh, 420 U.S. 103, 114 (1975); nor the time requirements to hold one in accord to City of riverside V. McLaughlin 500 U.S. 44, 56 (1991).

21.)    On February 6, 2008, Petitioner was notified by appointed State Agents, that due to their incompetence, and willful refusal to show undivided interest / communication under Wilkins V. U.S., 441 U.S. 468 (1979); Ferri V. Ackerman, 444 U.S. 193 (1979); thusly deprived Petitioner protection of his 6th Amend. Right of Counsel's Duty to Client under Critical Stages as set forth in U.S. V. Wade, 388 U.S. 218, 224 (1967); under Counsel's performance / effectiveness Standard Set forth in Powell V. Alabama, 287 U.S. 45, 57 *63-64*, 69 (1932). Thusly, depriving and foreclosing Petitioner's Pa.R.Crim.P. 576 Omnibus Pretrial Rights to a Suppression Hearing, under 4th Amend. Principals / Doctrines, [Exhibit 8] ; [Exhibit 9.4, Trial N.T. p.4, 6/11/08, In Camera Proceedings, Line 1-25].

22.)    On February 27, 2008, Kent D. Watkins, State Agent, Public Defender as described above, furthered the atrocious and willful deprivation of Petitioner's 6 and 14th Amend. Rights to a Speedy Trial and the Compulsory process. Thereby prejudicing Petitioner under the Lavasco V. U.S., 413 U.S. 738 (1977); and U.S. V. Marion, 404 U.S. 307, 324 (1971) rules, [Exhibit 7.8, S.C.C.P. Crim Plot 54-CR-669-2007, pp. 9 of 14, Entry's 2,3];

23.)    On June 11, 2008, The Commonwealth further deprived Petitioner of his 6th and 14th Amend. Rights, by utilizing Testimonial hearsay from the above procured outlawed conduct, to thus try and convict Petitioner in violation of Crawford V. Washington, 546 U.S. 36,68 (2004); as defined in Davis V. Washington, 547 U.S. 813, 822 (2006), [Exhibit 9-9.13].

24.)    On June 11, 2008, the Commonwealth unlawfully vouched for its witnesses with Petitioner's impaneled Jury Outlawed under U.S. V. Young, 470 U.S. 1, 18-19 (1985); In Re Dispoz-o-Plastics, 172 F.3 d 275 (3d CIR1999); Marshall V. Hendricks, 307 F. 3d 36,65 (3d CIR 2002), [Exhibit 9.5, S.C.C.P. N.T. p.5, Line 3-8].

25.)    Further atrocious unlawful conduct, as well as the above described outlawed conduct, Committed against the U.S. Constitutional Amend.'s 4,5,6, and 14th; thusly, proving the aforementioned Said unlawful conduct employed thus depriving Petitioner of any type of Constitutional protections; are proved herein by the attached hereto Documented record

Evidence, [Exhibit 9-9.13, S.C.C.P. N.T. pp.: 2-6; 90-92].

26.)        On August 27, 2008, a timely Direct Appeal was executed, PA. Superior Ct. Middle District, No. 1547 MDA 2008, [Exhibit 10-10.2, Dkt. No. 1547 MDA 2008, Appeal Docket Sheet].

27.)        On December 8, 2008, Appointed State Agent, Kenneth D. Watkins, abandoned Petitioner at a "Critical Stage" of Direct Appeal. In fact, Counsel was not only ineffective, Counsel was incompetent. Said party filed a motion to withdrawal appearance under "Tuner / Finley", instead of an "Anders" Brief. with the Pa. Superior Court admonishing said incompetence as the very first in its Opinion dated April 14, 2010. This very act triggers numerous Sixth Amend. Authorities, Powell V. Alabama, 308 U.S. 444, 446 (1940); U.S. V. Decostor, 624 F. 2d 196, 219, Cert. den. 444 U.S. 944 (1979); McMann V. Richardson, 397 U.S. 759 (1970); Strickland V. Washington, 466 U.S. 668 (1984); and U.S. V. Mannino, 212 F.3d 835 (3d CIR 2000) (Strickland test applies with equal force to appellate counsel). [Exhibit(s) 11-11.1; Ex 16, Pa. Sup. Op., 1547 MDA 2008, pg. 1]

28.)        On the above Said date, Appointed Counsel withdrew his appearance on the exact same day Petitioner's Brief was due in the Pa. Superior Court. Subsequently filing a boiler plate Brief, thereby forclosing any type of Due Process, or meaningful Appeal, under the 6th and 14th Amend.'s, [Exhibit 10-10.1].

29.)        On January 29, 2009, to add insult to injury, Petitioner was not only abandoned by incompetent Counsel under the 6th Amend; a Third-Party State Agent, Tyler Reese, notified Petitioner of Counsel's withdrawal, relinquishing a discovery packet in the instant case. [Exhibit 12].

30.)        On February 13, 2009, P.J. , Baldwin, violated Petitioners Pro-Se rights under Faretta V. California, 422 U.S. 806 (1975); and forced representation under McKaskle V. Wiggins, 465 U.S. 168, 177 (1984) (IN RE FARETTA), [Exhibit 13].

31.)        On March 12, 2009, Petitioner under necessity was forced to give up one Constitutional Right to assert another outlawed under Simmons V. U.S., 390 U.S. 377, 394 (1968), to thusly, assert his Faretta, and McKaskle Rights, Supra, by submitting a motion to Strike Appointed Counsels' Brief, to proceed pro-se in a Constitutionally unprotected and defective proceeding known as P.C.R.A., [Exhibit 14-14.1].

32.)        On March 16, 2009, The Pa. Superior Court further denied Petitioner's Faretta / McKaskle, 6 Amend., and 14th Amend.  Due process, [Exhibit 15].

33.)        On April 14, 2010, The Pa. Superior Court adjudicated Petitioner's Appeal, based on the above Said incompetent / ineffective Counsel's Letter and Brief. Thereby Scuttling Petitioner's Meritorious Constitutional Claims under Administrative Fiat. Furthering the Atrocious miscarriage of Justice under the 6th and 14th Amend. Ultimately relying on the credibility of the above Said Police Officer's testimony in violation of Crawford & Davis, Supra.. Violating Petitioner's Due Process rights under Wolffe V. McDonnell, 418 U.S. 539, 558

(1994) (Citing - Dent V. W. Virginia, 129 U.S. 114, 123 (1889)); Grannis V. Ordean, 234 U.S. 385; U.S. V. Sisson, 399 U.S. 314 (1970); Bolling V. Sharpe, 347 U.S. 497, 499 (1954); Ex parte Milligan, 4 wall. 2, 120-121; Hamilton V. Kentucky Distillers, 251 U.S. 146; Kennedy V. Mendoza-Martinez, 372 U.S. 144 (1963); Benton V. Maryland, 395 U.S. 793, 794, n.13 (Citing - Duncan V. Louisiana, 391 U.S. 145, 149 (1968); [Supremacy Clause], Sims V. Georgia, 385 U.S. 538 (1967); and Kalb V. Feuerstein, 308 U.S. 433 (1940), [Exhibit 16-16.6].

34.)     On the above Said date of April 14, 2010, the Pa. Superior Court continued the egregious Deprivation of Petitioner's U.S. Civil / Constitutional right, under the guise and ruse of Credible witnesses. When in fact All said witnesses have been formally charged by Federal Authorities, for the cover up of a capital offense. In fact, ALL THREE OF THE COMMONWEALTH'S BEST WITNESSES HAVE Been formally charged, on December 15, 2009. Petitioner's appeal was determined under an "alleged" de novo review, antecedent / post to this Factual event. [Exhibit(s) 17-17.6].

35.)     Pursuant to 28 U.S.C. 2254 (d)(1),(2); the decision's in the matter before the Federal Venue, resulted in a decision contrary to clearly established Federal Law as determined by the U.S. Supreme Court; and resulted in a determination that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court Proceeding.

36.)     Pursuant to 28 U.S.C. 2254 (b)(1)(B)(i),(ii); there is an absence of available State Corrective process; and circumstances exist that render such process ineffective to protect the rights of the applicant. State P.C.R.A. proceedings are Constitutionally unprotected and defective. Thus, forcing Petitioner to exhaust other State remedies, would mandate recourse to State Collateral review whose results have been predetermined, Brown V. Allen, 344 U.S. 443, 447 (1953); Castille V. Peoples, 489 U.S. 346, 350 (1989); Lambert V. Blackwell, 387 F. 3d 210, 232 (3d CIR 2004)(Same).

37.)     Pursuant to 28 U.S.C. 2254 (b)(3); The State, by and through, Judicial Order 218, May 9, 2000; expressly waives review in the Pa. Supreme Court, [Exhibit 18] ; with the Third Circuit Cognizant of Said order in Wenger V. Frank, 266 F. 3d 218, 224-26 (3d CIR 2001) [Exhibit 19-19.1].

38.)     Pursuant to 28 U.S.C. 225 4 (e) et. seq. , (f); has been fully met under the Sumner V. Mata, -U.S.-, 101 S.Ct. 764, 775 (1981) [Sumner I] Standard of Clear and Convincing evidence, Attached hereto the four corners of Petitioners, Petition for Habeas Corpus, herein.

## IV. CLAIMS

39.)     Petitioner maintains his actual innocence.

40.)     Defendant(s) deprived Petitioner of his 1st Amend. rights to petition the Government for the Redress of Grievances, by the unlawful arbitrary Government interference with Due Process.

41.)    Defendant(s) deprived petitioner of his 4th Amend. right of guarantee and protection from unlawful Search and Seizure(s).

42.)    Defendant(s) deprived Petitioner of his 5th Amend. rights of protection against self incrimination.

43.)    Defendant(s) deprived Petitioner of his 6th Amend. rights to a fair and impartial trial by jury; cross-examination of petitioners' accuser; competent Counsel; and Compulsory process.

44.)    Defendant(s) deprived petitioner of his 14th Amend., Due Process and Equal Protection of the Law(s) Clause(s), by arbitrary governmental interface with Due Process.

45.)    Defendant(s) employed and engaged in outlawed Conduct by Collusion, thus, becoming joint-tortfeasors, oppressing Petitioner under the Color of State Law by a local municipal instrumentality.

46.)    Defendant(s) utilized fraud, perjury, and manufactured evidence; to selectively, maliciously, and vindictive prosecution to try and convict Petitioner, by State Actor(s) now known to employ Said Conduct.

47.)    Defendant(s) deprived Petitioner of the 39th and 40th Articles of the Great Charter from John, 1215, [Magna Charta], to wit, "39th - No Freeman shall be arrested or detained in prison or be deprived of his freehold, or outlawed, or banished, or in any way molested; and we will not set forth against him nor send against him unless by the lawful judgment of his peers and by the law of the land, "..."40th - to no one will we sell, to no one will we refuse or delay, right or justice. ". Coinciding with " justice delayed is a justice denied..." U.S. ex. rel Geisler V. Walters, 510 F.2d 875 (CA. 3 1975).

48.)    Defendant(s) willfully deviated from the Supremacy Clause.

49.)    Defendant(s) willfully refused to discharge their Oath and Duty to the U.S. Constitution under U.S.C. 101, as Federal Officers / Employee's under 5 U.S.C. 2014, and 2105, implementing 42 U.S.C. 13701 et. seq..

50.)    All elements / prongs /criteria of 28 U.S.C. 2254 et. seq., as Stated aforementioned have been appeased.

51.)    Pursuant to Pennsylvania Judicial Order 218, The Defendant(s) expressly waive the exhaustion requirement; thus, Federal Comity is settled, with the instant matter ripe for review.

52.)    Petitioner is being unlawfully imprisoned, unlawful under the U.S. Constitution, and Article VI., C1.2.

53.)    Defendant(s) are committing fraud upon ALL Courts of the Land, outlawed under Hazel-Atlas Glass Co. V. Hartford-Empire Co., 323 U.S. 238 (U.S. Pa. 1944)(Citing - U.S. V. Throckmorton, 98 U.S. 61 (1889)).

V. <u>RELIEF</u>

54.)    Petitioner demands a Jury Review, under the Doctrine laid down in <u>Sparf & Hansen</u>
<u>V. U.S.</u>, 156 U.S. 51 (1895); under Article III; Article VI; cl.2; and Amend.'s 1 and 5.

55.)    A Declaratory Judgement that the outlawed conduct contained within the Four
Corners of this Petition, including the Exhibit(s) Attached hereto violated Petitioner's
Constitutional and Civil Rights.

56.)    This Court to Discharge its Duty to the U.S. Constitution under 28 U.S.C. 453.

57.)    This Court to involve its Power to Grant under 28 U.S.C. 2241.

58.)    This Court to Issue a Writ of Habeas Corpus under 28 U.S.C. 2243.

59.)    This Court to Stay Any / All State Court proceedings that currently unlawfully
imprison Petitioner under 28 U.S.C. 2251.

60.)    This Court to immediately release Petitioner from the Constitutionally outlawed
methodology, employed under the Color of State Law.

61.)    Any and All relief This Court deems Constitutionally prudent, and Equitable.

FURTHER <u>PETITIONER</u> <u>SAYETH</u> <u>NAUGHT</u>

VI. <u>VERIFICATION</u>

This Petition is Subscribed under 18 U.S.C. 1628. Affirmed to and verified under 28
U.S.C. 1746.

Executed this 23 day of April , 2010.

Ronald Gene Moll
Petitioner / Pro-se
HT-0026
SCRF-MERCER
801 Butler Pike
Mercer, PA.
16137

*Exhibit 4A*
*MD-44-07*

**Commonwealth of Pennsylvania**

**AFFIDAVIT OF PROBABLE CAUSE**

**COUNTY OF Schuylkill**

| Docket Number: *MD-44-07* | Police Incident Number: 123-159 | Warrant Control Number: *123-159* |
|---|---|---|
| (Issuing Authority): *JAMES K REILEY* | | |

*PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:*

Your affiant is employed as a police officer with the Shenandoah Borough Police Department. Your affiant has been employed as a full-time police officer for approximately nine years. During your affiant's career, I have conducted numerous drug-related investigations which yielded felony and misdemeanor arrests and convictions for drug law violations, as well as the seizure of illegal drugs, money, weapons and other contraband. Your affiant has attended several schools and seminars related to illegal drug investigations, including drug indentification, managing confidential informants, drug interdiction and conducting various types of drug investigations. Your affiant also attended and received certification in the United States Drug Enforcement Administration Advanced Narcotics Investigators training. Your affiant has been certified by the Honorable D. Michael Stine in the Schuylkill County Court of Common Pleas as an expert witness in the area of narcotics invesigations. Your affiant is also a current and active member of the Pennsylvania Narcotics Officers Association.

Beginning in the month of February 2007, your affiant began an investigation of the sale of illegal narcotics, namely, methamphetamine, occurring at 7 North Bridge Street in Shenandoah Borough. The sole occupant of 7 North Bridge Street is Ronald Gene Moll. During the course of this investigation, your affiant was assisted by a Confidential Informant (C.I.) who purchased quantities of methamphetamine from Moll at 7 North Bridge Street in Shenandoah Borough.

On one occasion in February 2007, your affiant was contact by the C.I., who stated that they could purchase an amount of "crank" (slang for methamphetamine) from Moll at his residence at 7 North Bridge Street in Shenandoah Borough. Your affiant instructed the C.I. to set up a transaction with Moll in order to make a controlled purchase of methamphetamine. Your affiant subsequently met with the C.I. at the Shenandoah Borough Police Department. The C.I. stated that they had contacted Moll and that Moll had methamphetamine available for purchase. Your affiant then performed a search of the C.I.'s person and clothing for contraband and/or money. No contraband or money was located on the C.I.'s person or clothing. Your affiant then provided the C.I. with an amount of United States currency to be used to purchase the methamphetamine from Moll at 7 North Bridge Street. Your affiant and the C.I. then left the Shenandoah Borough Police Department, entered your affiant's vehicle and drove to an area near 7 North Bridge Street. Your affiant parked my vehicle in an area which provided me with a clear, unobstructed view of 7 North Bridge Street. Your affiant remained in my vehicle while the C.I. exited my vehicle and walked a short distance to 7 North Bridge Street. Your affiant then observed the C.I. walk to the side of the building in order to access the stairway to Moll's residence, located on the second floor of the building. Minutes later, your affiant observed the observed the C.I. walk from around the side of 7 North Bridge Street back toward my location. The C.I. then re-entered your affiant's vehicle and handed your affiant a small plastic baggie containing an off-white granulated substance. Your affiant preliminarily identified the substance as methamphetamine. Your affiant and the C.I. then returned to the Shenandoah Police Department, where your affiant performed another search of the C.I.'s person and clothing for contraband and/or money. No contraband or money was located. The C.I. stated that they had purchased the baggie of methamphetamine from Moll while inside of his residence. Your affiant later performed a NARK drug field test on a sample of the granulated substance obtained from the C.I. The test yielded a positive result for amphetamine.

*Robert R. Nest   9 April 2007*

*James M Reilley   9/9/07*

AOPC 410B-10-24-98

*[EXHIBIT 1]*

On another occasion in March 2007, your affiant was contact by the C.I., who stated that they could, again, purchase an amount of "crank" (methamphetamine) from Moll at his residence at 7 North Bridge Street in Shenandoah Borough. Your affiant instructed the C.I. to set up a transaction with Moll in order to make a controlled purchase of methamphetamine. Later, your affiant met with the C.I. at the Shenandoah Borough Police Department. The C.I. stated that they had contacted Moll and that Moll had methamphetamine available for purchase. Your affiant then performed a search of the C.I.'s person and clothing for contraband and/or money. No contraband or money was located on the C.I.'s person or clothing. Your affiant then provided the C.I. with an amount of United States currency to be used to purchase the methamphetamine from Moll at 7 North Bridge Street. Your affiant and the C.I. then left the Shenandoah Borough Police Department, entered your affiant's vehicle and drove to an area near 7 North Bridge Street. Your affiant parked my vehicle in an area which provided me with a clear, unobstructed view of 7 North Bridge Street. Your affiant remained in my vehicle while the C.I. exited my vehicle and walked a short distance to 7 North Bridge Street. Your affiant then observed the C.I. walk to the side of the building in order to access the stairway to Moll's residence, located on the second floor of the building. Minutes later, your affiant observed the C.I. walk from around the side of 7 North Bridge Street back toward my location. The C.I. then re-entered your affiant's vehicle and handed your affiant a small plastic baggie containing an off-white granulated substance. Your affiant preliminarily identified the substance as methamphetamine. Your affiant and the C.I. then returned to the Shenandoah Police Department, where your affiant performed another search of the C.I.'s person and clothing for contraband and/or money. No contraband or money was located. The C.I. stated that they had purchased the baggie of methamphetamine from Moll while inside of his residence. Your affiant later performed a NARK drug field test on a sample of the granulated substance obtained from the C.I. The test yielded a postive result for amphetamine.

On 9 April 2007, your affiant was contacted by the C.I. who stated that Moll had an amount of illegal narcotics, namely, methamphetamine, in his possession, which was being stored at Moll's residence located at 7 North Bridge Street in Shenandoah Borough.

Your affiant began surveillance on 7 North Bridge Street on 9 April 2007. At approximately 2030 hours, your affiant observed a white Chevrolet sedan bearing Pennsylvania registration FRP9010 being operated by a white male park in front of 7 North Bridge Street. The white male subsequently exited his vehicle and entered Moll's residence. The white male then exited approximately three minutes later. Your affiant checked registration FRP9010 with PENNDOT and found the registration to be expired and issued to a Pontiac. Your affiant contacted Shenandoah Borough Police Captain Jamie Gennarini and requested him to perform a traffic stop on the white Lumina. Captain Gennarini did stop the white Lumina and, through investigation, found the operator of the Lumina, David M. Willis, to be in possession of a quantity of methamphetamine. Your affiant examined the methamphetamine and found the packaging to be identical to the packaging of the methamphetamine obatined during the two previous controlled buys made from Moll with the C.I.

Your affiant requests that this application for search warrant be granted in order to search 7 North Bridge Street in Shenandoah Borough as described in the application.

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THIS AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

_____    9 APRIL 2007    _____    4-9-07 (SEAL)
Affiant Signature    Date    Issuing Authority Signature    Date

Page 3 of 4 Pages

[EXHIBIT 1.1]



| | |
|---|---|
| Defendant's Name: | Ronald Gene Moll |
| Docket Number: | CR 78 07 |

**POLICE
CRIMINAL COMPLAINT**

## AFFIDAVIT of PROBABLE CAUSE

Your affiant is employed as a police officer with the Shenandoah Borough Police Department.

Beginning in the month of February 2007, your affiant began an investigation of the sale of illegal narcotics, namely, methamphetamine, occurring at 7 North Bridge Street in Shenandoah Borough. The sole occupant of 7 North Bridge Street is Ronald Gene Moll. During the course of this investigation, your affiant was assisted by a Confidential Informant (C.I.) who purchased quantities of methamphetamine from Moll at 7 North Bridge Street in Shenandoah Borough.

On one occasion in February 2007, your affiant was contact by the C.I., who stated that they could purchase an amount of "crank" (slang for methamphetamine) from Moll at his residence at 7 North Bridge Street in Shenandoah Borough. Your affiant instructed the C.I. to set up a transaction with Moll in order to make a controlled purchase of methamphetamine. Your affiant subsequently met with the C.I. at the Shenandoah Borough Police Department. The C.I. stated that they had contacted Moll and that Moll had methamphetamine available for purchase. Your affiant then performed a search of the C.I.'s person and clothing for contraband and/or money. No contraband or money was located on the C.I.'s person or clothing. Your affiant then provided the C.I. with an amount of United States currency to be used to purchase the methamphetamine from Moll at 7 North Bridge Street. Your affiant and the C.I. then left the Shenandoah Borough Police Department, entered your affiant's vehicle and drove to an area near 7 North Bridge Street. Your affiant parked my vehicle in an area which provided me with a clear, unobstructed view of 7 North Bridge Street. Your affiant remained in my vehicle while the C.I. exited my vehicle and walked a short distance to 7 North Bridge Street. Your affiant then observed the C.I. walk to the side of the building in order to access the stairway to Moll's residence, located on the second floor of the building. Minutes later, your affiant observed the observed the C.I. walk from around the side of 7 North Bridge Street back toward my location. The C.I. then re-entered your affiant's vehicle and handed your affiant a small plastic baggie containing an off-white granulated substance. Your affiant preliminarily identified the substance as methamphetamine. Your affiant and the C.I. then returned to the Shenandoah Police Department, where your affiant performed another search of the C.I.'s person and clothing for contraband and/or money. No contraband or money was located. The C.I. stated that they had purchased the baggie of methamphetamine from Moll while inside of his residence. Your affiant later performed a NARK drug field test on a sample of the granulated substance obtained from the C.I. The test yielded a postive result for amphetamine.

On another occasion in March 2007, your affiant was contact by the C.I., who stated that they could, again, purchase an amount of "crank" (methamphetamine) from Moll at his residence at 7 North Bridge Street in Shenandoah Borough. Your affiant instructed the C.I. to set up a transaction with Moll in order to make a controlled purchase of methamphetamine. Later, your affiant met with the C.I. at the Shenandoah Borough Police Department. The C.I. stated that they had contacted Moll and that Moll had methamphetamine available for purchase. Your affiant then performed a search of the C.I.'s person and clothing for contraband and/or money. No contraband or money was located on the C.I.'s person or clothing. Your affiant then provided the C.I. with an amount of United States currency to be used to purchase the methamphetamine from Moll at 7 North Bridge Street. Your affiant and the C.I. then left the Shenandoah Borough Police Department, entered your affiant's vehicle and drove to an area near 7 North Bridge Street. Your affiant parked my vehicle in an area which provided me with a clear, unobstructed view of 7 North Bridge Street. Your affiant remained in my vehicle while the C.I. exited my vehicle and walked a short distance to 7 North Bridge Street. Your affiant then observed the C.I. walk to the side of the building in order to access the stairway to Moll's residence, located on the second floor of the building. Minutes later, your affiant observed the C.I. walk from around the side of 7 North Bridge Street back toward my location. The C.I. then re-entered your affiant's vehicle and handed your affiant a small plastic baggie containing an off-white granulated substance. Your affiant preliminarily identified the substance as methamphetamine. Your affiant and the C.I. then returned to the Shenandoah Police Department, where your affiant performed another search of the C.I.'s person and clothing for contraband and/or money. No contraband or money was located. The C.I. stated that they had purchased the baggie of methamphetamine from Moll while inside of his residence. Your affiant later performed a NARK drug field test on a sample of the granulated substance obtained from the C.I. The test yielded a postive result for amphetamine.

I, ___Chief Matthew R. Nestor_____ , **BEING DULY SWORN ACCORDING TO LAW,**

3-3

[EXHIBIT 1.2]

EXHIBITS

**Commonwealth of Pennsylvania**

**COUNTY OF Schuylkill**



MD-44-07

**APPLICATION FOR SEARCH WARRANT AND AUTHORIZATION**

| Docket Number (Issuing Authority) JAMES K. REILEY | Police Incident Number: 123-159 | Warrant Control Number: 123-159 |
|---|---|---|

| Chief Matthew R. Nestor | Shenandoah Boro Police Dept. | 570-462-1008 | 9 April 2007 |
|---|---|---|---|
| AFFIANT NAME | AGENCY | PHONE NUMBER | DATE OF APPLICATION |

IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED (Be as specific as possible):

See Continuation Page

SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED (Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.):

The entire residence and property comprising 7 North Bridge Street in Shenandoah Borough, Schuylkill County, Pennsylvania; said residence and property being a residential two-story single brick structure with a white siding façade on the front (west) side of the building, a garage on the first floor of the structure with a white garage door; the number "7" on the front of the residence directly above the garage door and living quarters being located on the second floor of the structure.

NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED (If proper name is unknown, give alias and/or description):

Ronald Gene Moll

| VIOLATION OF (Describe conduct or specify statute): Title 35: The Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act | DATE(S) OF VIOLATION: See Affidavit |
|---|---|

☐ *Warrant Application Approved by District Attorney – DA File No.* _____
(If DA approval required per Pa.R.Crim.P. 201(1) with assigned File No. per Pa.R.Crim.P. 507)

☐ *Additional Pages Attached (Other than Affidavit of Probable Cause)*

☒ *Probable Cause Affidavit(s) MUST be attached (unless sealed below)   Total number of pages*

TOTAL NUMBER OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED.

The below named Affiant, being duly sworn (or affirmed) before the Issuing Authority according to law, deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure, and is located at the particular premises or in the possession of the particular person as described above.

_____    SHENANDOAH POLICE DEPT.
Signature of Affiant          Agency or Address if private Affiant          Badge Number

Sworn to and subscribed before me this  9  day of  April  200_  Mag. Dist No. _____  (SEAL)

_____  200 N. Centre St. Pottsville, PA 17901
Signature of Issuing Authority          Office Address

**SEARCH WARRANT**
TO LAW ENFORCEMENT OFFICER:

WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

☒ This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later than:*

☐ This Warrant shall be served as soon as practicable and may be served any time during the day or night but in no event later than:**

_10:00_ P M, o'clock  4/11/07

\* The issuing authority should specify a date not later than two (2) days after issuance. Pa.R.Crim.P. 205(4).

\*\* If the issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit(s) and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 206(7).

Issued under my hand this  9TH  day of  April  2007  at  11:28 P  M, o'clock          (SEAL)

_____  21-2-07          01-02-2012
Signature of Issuing Authority   Mag. Dist. of Judicial Dist. No.   Date Commission Expires

Title of Issuing Authority: ☒ District Justice   ☐ Common Pleas Judge   ☐

☐ For good cause stated in the affidavit(s) the Search Warrant Affidavit(s) are sealed for _____ days by my certification and signature. (Pa.R.Crim.P. 211)

_____    _____ (Date)   (SEAL)
Signature of Issuing Authority (Judge of the Court of Common Pleas or Appellate Court Justice or Judge).

AOPC 410A-01

TO BE COMPLETED BY THE ISSUING AUTHORITY

[EXHIBIT 2]

EXHIBIT 5-A

| Commonwealth of Pennsylvania | APPLICATION FOR SEARCH WARRANT |
|---|---|
| COUNTY OF Schuylkill | CONTINUATION PAGES |

| Docket Number JAMES. K. REILEY (Issuing Authority): MD-44-07 | Police Incident Number: 123-159 | Warrant Control Number: 123-159 |
|---|---|---|

**Continuation of:**

☒ Items to be searched and seized  ☐ Description of premises/person(s) to be searched  ☐ Owner/ Occupant  ☐ Violations

---

Namely, quantities of controlled substances, controlled substances paraphernalia, the means and instrumentalities utilized in the possession, dilution and/or distribution of controlled substances including but not limited to packaging materials, scales and other measuring tools, any and all proceeds, including but not limited to United States currency that has been acquired or gained through the distribution and sale of controlled substances, all records, papers, tally sheets, stored electronic communication devices and the contents therein, records relating to customers, suppliers, distributors, couriers and other papers reflecting controlled substance distribution or transportation, any firearms or weapons which are kept for the protection of said controlled substances, all of which are in violation of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act of 1972.

Mark R. Nester  9 APRIL 2007        James M Reiley  4/9/07

Page 4 of 4 Pages

[EXHIBIT 2.1]

*EXHIBITS-3*

| Defendant's Name: | Ronald Gene Moll |
|---|---|
| Docket Number: | CR 77 07 |



**POLICE
CRIMINAL COMPLAINT**

## AFFIDAVIT of PROBABLE CAUSE

Your affiant is employed as a police officer with the Shenandoah Borough Police Department.

On 10 April 2007 at approximately 0605 hours, your affiant and other Shenandoah Borough Police Department officers served a search warrant at 7 North Bridge Street in Shenandoah Borough, a residence occupied by Ronald Gene Moll. A search of the residence yielded approximately 11 grams of methamphetamine, a digital scale, packaging materials and a Jennings .22 caliber pistol. A check of Moll's criminal history revealed :  previous guilty pleas for felony Burglary and Larceny.

I,  Chief Matthew R. Nestor                              , BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

_(Signature of Affiant)_

Sworn to me and subscribed before me this _10th_ day of _April_ _2007_

_District Justice_

**SEAL**

My commission expires first Monday of January, _2010_.

_[EXHIBIT 2.2]_

TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

*EXHiBit 5-0*

_____
(Signature of Affiant)

Sworn to me and subscribed before me this ___10th___ day of ___April___ ___07___

_____  District Justice

SEAL

My commission expires first Monday of January, ___2010___ .

[EXHIBIT 2.3]

COMMONWEALTH OF PENNSYLVANIA

County of: **SCHUYLKILL**

**WARRANT OF ARREST**

Commonwealth of Pennsylvania
VS.

| | |
|---|---|
| Mag. Dist. No.: **21-3-05** | |
| MDJ Name: Hon.: **WILLIAM A SLEZOSKY** | |
| Address: **33 S MAIN ST** | |
| **SHENANDOAH,PA 17976** | |
| Telephone: (**570**) **462-2680** | |

*4-10-07*

NAME and ADDRESS

⌐ **MOLL, RONALD GENE**            ¬
**7 N. BRIDGE ST.**

**SHENANDOAH, PA 17976**
                              ⌐      ⌐



| | |
|---|---|
| Complaint No: **123-175** | Docket No: **CR-0000077-07** |
| Charging Officer: **NESTOR, MATTHEW R** | NCIC OFF: |
| Date Filed: **4/10/07** | OOC: |
| OTN: **K 423757-5** | WARRANT ID: **MDJS0013791567** |

Warrant Control No:    **21-3-05-AW-0000221-2007**
Issued For:    **MOLL, RONALD GENE**
Reason for Warrant:    **OTHER - ARREST WARRANT**
**FELONY**

Charge(s):                                                        Offense Date

| | |
|---|---|
| S 35 §780-113 §§A30 POSS. W/INTENT TO DELIVER A CONTROL. SUBSTANCE | 04/10/07 |
| S 35 §780-113 §§A16 POSS. OF CONTROLLED SUBSTANCE | 04/10/07 |
| S 35 §780-113 §§A32 POSS. OF DRUG PARAPHERNALIA | 04/10/07 |

**TO POLICE OFFICER:**

In the name of the Commonwealth of Pennsylvania, you are commanded to take the defendant,
**MOLL, RONALD GENE** _____ , into custody.  When the defendant is taken into
custody, bring the defendant before me at the Court address shown above to answer the Commonwealth or
_____ **SHENANDOAH** _____ upon the complaint of
_____ **NESTOR, MATTHEW R** _____  charging the defendant with the offense(s) set forth above and
further to be dealt with according to law.

Witness the hand and official seal of the issuing authority on this _____ day of _____, _____ .

SEAL _____

(Signature)

[EXHIBIT 3]

# ADDITIONAL CHARGES

Mag. Dist. No.: **21-3-05**

OTN: **K 423757-5**

Defendant Name:

**MOLL, RONALD GENE**

---

**CR-0000077-07**    (CONTINUED)

S 18 §6105 §§A1 PERSONS NOT TO POSSESS FIREARMS                    4/10/07

4- 3174

[EXHIBIT 3.]

---

**WARRANT OF ARREST**

# RETURN WHERE DEFENDANT FOUND

By authority of this warrant, on _____ , 20 _____

I took into custody the within named _____ , and he/she is

☐ before you for disposition.

☐ in the _____ Prison.

# RETURN WHERE DEFENDANT IS NOT FOUND

☐ After careful search, I cannot find the within named defendant.

_____
(Signature of Police Officer - Name and Title)

Officer's Costs:
| | |
|---|---|
| Warrant | _____ |
| Miles @   ¢ | _____ |
| Commitments | _____ |
| Miles @  ¢ | _____ |
| Conveying to hearing | _____ |
| Miles @  ¢ | _____ |
| Total | _____ |

## DEFENDANT CONTACT INFORMATION

ADDRESS:  **MOLL, RONALD GENE**
**7 N. BRIDGE ST.**

**SHENANDOAH, PA 17976**        TELEPHONE:  **(570)**

## DEFENDANT IDENTIFICATION INFORMATION:

| LiveScan Tracking Number | Social Security Number | SID(State Identification Number) |
|---|---|---|
| | **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** | |

| Driver's License Information | License Number **23827989** | State **PA** | Expiration Date **00/00/00** |
|---|---|---|---|

### DEFENDANT VEHICLE INFORMATION

| Plate Number | State | Hazmat | Registration Sticker (MM/YY) | Comm'l Veh. Ind. | School Veh. | Oth.Veh.Cd |
|---|---|---|---|---|---|---|
| | | | **00 /00.00** | | | **Y** |

### DEFENDANT IDENTIFICATION INFORMATION

| AGE | RACE | ETHNICITY | GENDER | EYE COLOR | HAIR COLOR | DATE OF BIRTH | WEIGHT(lbs) | HEIGHT (Ft/In) |
|---|---|---|---|---|---|---|---|---|
| **64** | **W** | | **M** | | | **1/22/43** | **000** | |

NCIC Extradition Code / Description
                    Distance

ALIAS: _____

_____

_____

Mag. Dist. No: **21-3-05**        Docket Number:  **CR-0000077-07**

[EXHIBIT 3.2]

**SHERIFF/CONSTABLE/OFFICER**
**DATE PRINTED:    4/10/07        11:18:10        AM**

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF: **SCHUYLKILL**

# NOTICE OF
# PRELIMINARY HEARING

### COMMONWEALTH OF

### PENNSYLVANIA

Mag. Dist. No.:

**21-3-05**

MDJ Name: Hon.

Address: **WILLIAM A. SLEZOSKY**
**33 S MAIN ST**
**SHENANDOAH, PA**

Telephone: (**570**) **462-2680**    **17976**

**VS.**

DEFENDANT:    NAME and ADDRESS

**MOLL, RONALD GENE**
**7 N. BRIDGE ST.**
**SHENANDOAH, PA 17976**

**RONALD G. MOLL**
**7 N. BRIDGE ST.**
**SHENANDOAH, PA 17976**

Docket No.: **CR-0000078-07**
Date Filed: **4/10/07**
**K 423758-6**



Charge(s):

**S 35 §780-113 §§A30 (2 COUNTS) DELIVERY OF A CONTROLLED SUBSTANCE**
**S 35 §780-113 §§A16 (2 COUNTS) POSS. OF A CONTROLLED SUBSTANCE**

## NOTICE TO DEFENDANT

A complaint has been filed charging you with the offense(s) set forth above and on the attached copy of the complaint. A preliminary hearing on these charges has been scheduled for:

| Date: | **4/20/07** | Place: **DISTRICT COURT 21-3-05**<br>**33 S MAIN ST** |
|---|---|---|
| Time: | **1:30PM** | **SHENANDOAH, PA 17976**<br>**570-462-2680** |

If you fail to appear at the time and place above without good cause, you will be deemed to have waived your right to be present at any further proceedings before the Magisterial District Judge, the case will proceed in your absence, and a warrant will be issued for your arrest.

At the preliminary hearing you may:

1.   Be represented by counsel;

2.   Cross-examine witnesses and inspect physical evidence offered against you;

3.   Call witnesses on your behalf other than witnesses to testify to your good reputation only, offer evidence on your behalf and testify;

4.   Make written notes of the proceeding, or have your counsel do so, or make a stenographic, mechanical or electronic record of the proceedings.

**If you cannot afford to hire an attorney, one may be appointed to represent you. Please contact the office of the Magisterial District Judge for additional information regarding the appointment of an attorney.**

If you have any questions, please call the above office immediately.

_____**4/10/07**_____ Date _____*William P. Slezosky*_____ _____ Magisterial District Judge

My commission expires first Monday of January, **2010** .

**If you are disabled and require a reasonable accommodation to gain access to the Magisterial District Court and its services, please contact the Magisterial District Court at the above address or telephone number. We are unable to provide transportation.**

**COMPLAINT NUMBER:    123-159**     **DATE PRINTED: 4/10/07    11:44:54 AM**
                                                         **DATE COMPLAINT SIGNED:    4/10/07**

AOPC 629-06

[EXHIBIT 4]

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF: __SCHUYLKILL__

# NOTICE OF CONTINUANCE

Mag. Dist. No.:

**21-3-05**

MDJ Name: Hon

**WILLIAM A. SLEZOSKY**

Address: **33 S MAIN ST**

**SHENANDOAH, PA**

Telephone: **(570) 462-2680    17976**

**COMMONWEALTH OF**

**PENNSYLVANIA**

**VS.**

DEFENDANT:    NAME and ADDRESS

**MOLL, RONALD GENE**

**7 N. BRIDGE ST.**

**SHENANDOAH, PA 17976**

**RONALD G. MOLL**

**7 N. BRIDGE ST.**

**SHENANDOAH, PA 17976**

Docket No.: **CR-0000077-07**

Date Filed:    **4/10/07**

**K 423757-5**



Please note that the hearing in the above captioned case, which was scheduled to occur on: __**4/20/07**__

has been continued to:

| Date: | **5/02/07** | Place: | **DISTRICT COURT 21-3-05** |
| | | | **33 S MAIN ST** |
| Time: | **10:00 AM** | | **SHENANDOAH, PA 17976** |

If you have any questions, please contact this office immediately.

Continuance requested by: __**MAGISTERIAL DIST. JUDGE**__

**If you are disabled and require assistance, please contact the Magisterial District office at the address above.**

__**4/10/07**__ Date _(signature)_    Magisterial District Judge

My commission expires first Monday of January, **2010** .

_[EXHIBIT 4.1]_

**COMPLAINT NUMBER:    123-175    DATE PRINTED:** 4/10/07    11:19:50 AM

AOPC 616-05    **DATE COMPLAINT SIGNED:** 4/10/07

EX1164

# COMMONWEALTH OF PENNSYLVANIA

COUNTY OF SCHUYLKILL

## WILLIAM A. SLEZOSKY

DISTRICT JUSTICE

DISTRICT COURT 21-3-05
33 SOUTH MAIN STREET
SHENANDOAH, PA 17976
(570) 462-2680

DELANO TOWNSHIP
EAST UNION TOWNSHIP
MAHANOY TOWNSHIP
MAHANOY CITY BORO
NORTH UNION TOWNSHIP
RINGTOWN BORO
SHENANDOAH BORO
UNION TOWNSHIP

## ARRESTING OFFICER'S WRITTEN REQUEST TO WITHDRAW CHARGES

DATE: _2 MAY 2007_

CASE/DOCKET NUMBER: _CR - 78-07_

DEFENDANT' NAME: _RONALD G. MOLL_

OFFICER'S NAME: _CHIEF MATTHEW R. NESTOR_

I _CHIEF MATTHEW R. NESTOR_, THE ARRESTING OFFICER IN THE MENTIONED CASE, DO HEREBY VOLUNTARILY, KNOWINGLY AND WILLINGLY WITHDRAW THE CHARGE (S) OF _780-113 (30) - POSS. W/INTENT_
_780-113 (16) - POSS. CONTROLLED S.85_

AGAINST THE DEFENDANT BECAUSE _C.I. NOT AVAILABLE TO TESTIFY_

_____
OFFICER'S SIGNATURE

_2 MAY 2007_
DATE

_____
DISTRICT ATTORNEYS SIGNATURE

_5/2/07_
DATE

_____
DISTRICT JUSTICE

_5-2-07_

[EXHIBIT 5]

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET



**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

**Court Case**

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 1 of 14

## CASE INFORMATION

Cross Court Docket Nos: 1547 MDA 2008, CR-0000077-07

| | |
|---|---|
| Judge Assigned: | Date Filed: 05/07/2007   Initiation Date: 04/10/2007 |
| OTN: K4237575 | Lower Court Docket No: CR-0000077-07 |
| Initial Issuing Authority: William A. Slezosky | Final Issuing Authority: William A. Slezosky |
| Arresting Agency: Shenandoah Boro Police Dept | Arresting Officer: Nestor, Matthew R. |
| Case Local Number Type(s) | Case Local Number(s) |

## RELATED CASES

| Related Docket No | Related Case Caption | Related Court | Association Reason |
|---|---|---|---|
| **Related Misc. Bail Cases** | | | |
| CP-54-MD-0000460-2007 | In Re: Magisterial District Judge Mat | CP-21-54-Crim | Same MDJ Case |

## STATUS INFORMATION

Case Status: Closed       Arrest Date: 04/10/2007

| Status Date | Processing Status |
|---|---|
| 08/26/2008 | Awaiting Appellate Court Decision |
| 08/12/2008 | Sentenced/Penalty Imposed |
| 06/20/2008 | Awaiting Sentencing |
| 06/20/2008 | Awaiting PSI |
| 06/20/2008 | Awaiting Sentencing |
| 06/11/2008 | Awaiting PSI Completion |
| 06/11/2008 | Awaiting Sentencing |
| 01/04/2008 | Awaiting Trial |
| 01/04/2008 | Warrant Lifted |
| 12/07/2007 | Active Bench Warrant |
| 07/10/2007 | Awaiting Plea Court |
| 07/09/2007 | Awaiting Formal Arraignment |
| 05/07/2007 | Awaiting Filing of Information |
| 05/07/2007 | Awaiting ARD Hearing |

Event Track: Standard Court Case       Complaint Date: 04/10/2007

*[EXHIBIT 7]*

EXHIBIT "B" – PAGE 1 OF 7 PAGES

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY
## SECURE DOCKET



**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

**Court Case**

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 2 of 14

## CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Bench Warrant Hearing | 01/04/2008 | 2:30 pm | Courtroom 5 | Judge D. Michael Stine | Scheduled |
| Criminal Jury Trials | 06/11/2008 | 8:00 am | | | Scheduled |
| Sentencing | 08/12/2008 | 9:30 am | Courtroom 4 | Judge William E. Baldwin | Scheduled |

## WARRANT INFORMATION

| Date | Control No | Warrant Status | Warrant Type | Judge |
|---|---|---|---|---|
| 01/04/2008 | 54-BA-0000186-2007 | Lifted - Active | Bench Warrant - Failure to Appear | Stine, D. Michael |

## CONFINEMENT INFORMATION

| Confinement Known As Of | Confinement Type | Destination Location | Confinement Reason | Still in Custody |
|---|---|---|---|---|
| 04/10/2007 | MDJ Confinement | Schuylkill County Prison | Bail Not Posted | Yes |
| 04/10/2007 | MDJ Confinement | Schuylkill County Prison | Bail Not Posted | Yes |
| 04/10/2007 | MDJ Confinement | Schuylkill County Prison | Bail Not Posted | Yes |

## DEFENDANT INFORMATION

| | | | |
|---|---|---|---|
| **Name** | Ronald Gene Moll | **Hair Color** | **Eye Color** |
| **Date of Birth** | 01/22/1943 | **Address** | |
| **SSN** | 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 | Address Type Home : | |
| **SID** | | 7 N. Bridge St. | |
| | | Shenandoah, PA  17976 | |
| **Drivers License No** | 23827989 | | |
| **Drivers License State** | PA | | |

| Alias Name | Alias SID | Alias SSN |
|---|---|---|
| Moll, Ronald G. | | 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 |

## CASE PARTICIPANTS

| Participant Type | Name | |
|---|---|---|
| Prosecution | Commonwealth of Pennsylvania | |
| Defendant | Moll, Ronald Gene | |
| Affiant | Nestor, Matthew R. | [EXHIBIT 7.1] |
| Professional Surety | Bondsman | |

EXHIBIT "B" - PAGE 2 OF 7 PAGES

Printed: 10/27/2008

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET



**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

**Court Case**

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 3 of 14

## BAIL INFORMATION

**Moll, Ronald Gene**

**Nebbia Status: None**

| Bail Action | Date | Bail Type | Percentage | Amount | | |
|---|---|---|---|---|---|---|
| Bail Non-Monetary Condition/Condition Text | | | | | | |
| | | | | | Bail Posting Status | Posting Date |
| Set | 04/10/2007 | Monetary | | $2,500.00 | | |
| Forfeiture - Complete | 12/10/2007 | Monetary | | $2,500.00 | | |
| Bail Forfeiture Set Aside | 01/04/2008 | Monetary | | $2,500.00 | | |
| Set (bail modification) | 01/04/2008 | Monetary | | $5,000.00 | | |
| Set (bail modification) | 06/11/2008 | Monetary | | $25,000.00 | | |
| | | | | | Posted | 04/24/2007 |

## CHARGES

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Date | OTN |
|---|---|---|---|---|---|---|
| 1 | 1 | F | 35 § 780-113 §§A3( | Manuf/Del/Poss/W Int Manuf Or Del | 04/10/2007 | K4237575 |
| 2 | 4 | F2 | 18 § 6105 §§A1 | Possession Of Firearm Prohibited | 04/10/2007 | K4237575 |
| 3 | 2 | M | 35 § 780-113 §§A1( | Int Poss Contr Subst By Per Not Reg | 04/10/2007 | K4237575 |
| 4 | 3 | M | 35 § 780-113 §§A3: | Use/Poss Of Drug Paraph | 04/10/2007 | K4237575 |

EXHIBIT "B" – PAGE 3 OF 7 PAGES

[EXHIBIT 7.2]

AOPC 1221 - Rev 10/27/2008                                                                 Printed: 10/27/2008

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET



**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

**Court Case**

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 4 of 14

## DISPOSITION SENTENCING/PENALTIES

Disposition

| Case Event | Disposition Date | Final Disposition |
|---|---|---|
| Sequence/Description | Offense Disposition | Section |
| Sentencing Judge | Sentence Date | Credit For Time Served |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | Start Date |
| Sentence Conditions | | |
| Linked Offense - Sentence | Link Type | Linked Docket Number |

**Lower Court Proceeding (generic)**

| Lower Court Disposition | 05/02/2007 | Not Final | |
|---|---|---|---|
| 1 / Manuf/Del/Poss/W Int Manuf Or Del | Held for Court (Lower Court) | 35§780-113§§A30 | |
| 2 / Possession Of Firearm Prohibited | Held for Court (Lower Court) | 18§6105§§A1 | |
| 3 / Int Poss Contr Subst By Per Not Reg | Held for Court (Lower Court) | 35§780-113§§A16 | |
| 4 / Use/Poss Of Drug Paraph | Held for Court (Lower Court) | 35§780-113§§A32 | |

**Proceed to Court**

| Information Filed | 07/09/2007 | Not Final | |
|---|---|---|---|
| 1 / Manuf/Del/Poss/W Int Manuf Or Del | Held for Court | 35§780-113§§A30 | |
| 2 / Possession Of Firearm Prohibited | Held for Court | 18§6105§§A1 | |
| 3 / Int Poss Contr Subst By Per Not Reg | Held for Court | 35§780-113§§A16 | |
| 4 / Use/Poss Of Drug Paraph | Held for Court | 35§780-113§§A32 | |

**Guilty Plea**

| Criminal Jury Trials | 06/11/2008 | Final Disposition | |
|---|---|---|---|
| 1 / Manuf/Del/Poss/W Int Manuf Or Del | Guilty | 35§780-113§§A30 | |
| Baldwin, William E. | 08/12/2008 | 238 Days | |
| Confinement | Min of 5.00 Years | 08/12/2008 | |
| | Max of 10.00 Years | | |
| | 5 years to 10 years | | |
| SUBMIT TO DNA TESTING | | | |
| 35§780-113§§A32 - Confinement | Concurrent From Seq. 4 | CP-54-CR-0000669-2007 | |

| 2 / Possession Of Firearm Prohibited | Dismissed | 18§6105§§A1 | |
|---|---|---|---|
| Baldwin, William E. | 08/12/2008 | | |

| 3 / Int Poss Contr Subst By Per Not Reg | Guilty | 35§780-113§§A16 | |
|---|---|---|---|
| Baldwin, William E. | 08/12/2008 | | |
| Merged | | | |

| 4 / Use/Poss Of Drug Paraph | Guilty | 35§780-113§§A32 | |
|---|---|---|---|
| Baldwin, William E. | 08/12/2008 | | |

*EXHIBIT 7.3*

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET

**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

SAME AS 1547 MDA 2008

**Court Case**

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 5 of 14

## DISPOSITION SENTENCING/PENALTIES

Disposition

| Case Event | | |
|---|---|---|
| Sequence/Description | Disposition Date | Final Disposition |
| Sentencing Judge | Offense Disposition | Section |
| Sentence/Diversion Program Type | Sentence Date | Credit For Time Served |
| Sentence Conditions | Incarceration/Diversionary Period | Start Date |
| Linked Offense - Sentence | Link Type | Linked Docket Number |
| Confinement | Min of 6.00 Months | |
| | Max of 12.00 Months | |
| | 6 months to 12 months | |
| 35§780-113§§A30 - Confinement | Concurrent To Seq. 1 | CP-54-CR-0000669-2007 |

EXHIBIT "B" - PAGE 5 OF 7 PAGES

[EXHIBIT 7.4]

AOPC 1221 - Rev 10/27/2008

Printed: 10/27/2008

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET



**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

**Court Case**

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 6 of 14

## COMMONWEALTH INFORMATION

Name:   Schuylkill County District Attorney's
        Office
        Prosecutor

Supreme Court No:

Phone Number(s):
        (570) 628-1350  (Phone)

Address:
        Schuylkill County Courthouse
        401 North 2nd Street
        Pottsville PA  17901

## ATTORNEY INFORMATION

Name:          Kent D. Watkins, Esq.
               Public Defender

Supreme Court No:   026001

Rep. Status:        Active

Phone Number(s):
        (570) 429-0326   (Phone)
        (570) 429-2081   (Fax)

Address:
        Schuylkill County Public Defender's Office
        101 S 2nd Street
        St Clair PA  17970--1204

Representing: Moll, Ronald Gene


Name:          William Leo Joseph Burke, Esq.
               Public Defender

Supreme Court No:   055242

Rep. Status:        Inactive

Phone Number(s):
        (570) 462-1219   (Phone)
        (570) 628-2420   (Phone)
        (570) 462-2909   (Fax)

Address:
        Burke & Burke Law Office
        4 E Centre St
        PO Box 248
        Shenandoah PA  17976--0248

Representing: Moll, Ronald Gene

        (570) 462-1219   (Phone)
        (570) 628-2420   (Phone)
        (570) 462-2909   (Fax)

Address:
        120 S. Claude A. Lord Blvd.
        Public Defender's Office
        Pottsville PA  17901

Representing: Moll, Ronald Gene

*[EXHIBIT 7.5]*

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET



**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

**Court Case**

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania
v.
Ronald Gene Moll

Page 7 of 14

## ENTRIES                                                    PGS    COV

| Sequence Number | CP Filed Date | Document Date | | | |
|---|---|---|---|---|---|
| Service To | | Service By | | Filed By | |
| Issue Date | Service Type | Status Date | | Service Status | |
| | PSI REPORT | | | APO | 22  X |
| 1 | 04/10/2007 | | | | |
| Bail Set - Moll, Ronald Gene | | | | | 2 |
| | | | | Slezosky, William A. | |
| 1 | 04/24/2007 | | | | |
| Bail Posted - Moll, Ronald Gene | | | | | 4 |
| | | | | Bondsman | |
| 1 | 05/07/2007 | | | | |
| Original Papers Received from Lower Court | | | | | 18 |
| | | | | Court of Common Pleas - Schuylkill County | |
| 1 | 07/09/2007 | | | | |
| Information Filed | | | | | 3 |
| | | | | Commonwealth of Pennsylvania | |
| 1 | 07/10/2007 | | | | |
| Entry of Appearance | | | | | 1 |
| | | | | Burke, William Leo Joseph | |
| 2 | 07/10/2007 | | | | |
| Waiver of Appearance at Arraignment and Entry of Plea | | | | | |
| | | | | Burke, William Leo Joseph | |
| 1 | 11/09/2007 | | | | |
| Case Scheduling Form | | | | | 1 |
| | | | | Baldwin, William E. | |
| 1 | 12/07/2007 | | | | |
| Motion for Bench Warrant | | | | | 2 |
| | | | | Commonwealth of Pennsylvania | |
| 2 | 12/07/2007 | | | | |
| Order Granting Motion for Bench Warrant | | | | | |
| | | | | Stine, D. Michael | |

*[EXHIBIT 7.6]*

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET



**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

**Court Case**

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 8 of 14

## ENTRIES

PGS    COV

| Sequence Number | CP Filed Date | Document Date | | |
|---|---|---|---|---|
| Service To | | Service By | Filed By | |
| Issue Date | Service Type | Status Date | Service Status | |

---

**3**            12/07/2007
Bench Warrant Printed
   The Defendant failed to appear at the Schuylkill County Courthouse on 11/21/07, for pretrial conferences.  The Defendant's Bail Shall Be Forfeited.

Stine, D. Michael

---

**1**            12/10/2007
Complete Bail Forfeiture - Moll, Ronald Gene; Bench Warrant Issued

Stine, D. Michael                    3

---

**1**            12/28/2007
Application for Bail Piece

Bondsman                    5

---

**1**            12/31/2007
Order Granting Motion for Bail Piece

Stine, D. Michael

---

**1**            01/04/2008
Order Scheduling Hearing

Stine, D. Michael                    1

---

**2**            01/04/2008
Bench Warrant Hearing Scheduled 1/4/2008  2:30PM

Court of Common Pleas - Schuylkill County

---

**3**            01/04/2008
Bail Set - Moll, Ronald Gene

Stine, D. Michael                    1

---

**4**            01/04/2008
Order Lifting Bench Warrant          [EXHIBIT 7.9]          Stine, D. Michael

---

**EXHIBIT "A" – PAGE 2 OF 7 PAGES**

Printed: 10/27/2008

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET

**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

**Court Case**

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 9 of 14

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | | PGS COV |
| --- | --- | --- | --- | --- |
| Service To | | Service By | Filed By | |
| Issue Date | Service Type | Status Date | Service Status | |
| 1 | 01/31/2008 | | | |
| Case Scheduling Form | | | | 1 |
| | | | Baldwin, William E. | |
| 1 | 02/27/2008 | | | |
| Motion for Continuance and Waiver of Pa.R. Crim.P. 600/1013 | | | | 6 |
| | | | Watkins, Kent D. | |
| 1 | 02/28/2008 | | | |
| Order Granting Motion for Continuance and Waiver of Pa.R.Crim.P. 600/1013 | | | | 1 |
| Burke, William Leo Joseph | | | Stine, D. Michael | |
| 02/28/2008 | Interoffice | | | |
| Commonwealth of Pennsylvania | | | | |
| 02/28/2008 | Interoffice | | | |
| 1 | 03/17/2008 | | | |
| Rule 576 Petition for Bail Reduction | | | | 1 |
| Schuylkill County District Attorney's Office | | | Moll, Ronald Gene | |
| 03/17/2008 | Hand Delivered | | | |
| 1 | 05/01/2008 | | | |
| Case Scheduling Form | | | | 1 |
| | | | Baldwin, William E. | |
| 1 | 06/04/2008 | | | |
| Jury Impaneled | | | | 2 |
| | | | Schuylkill County Court Administration | |
| 1 | 06/10/2008 | | | |
| Criminal Jury Trials Scheduled 6/11/2008  8:00AM | | | | |
| | | | Court of Common Pleas - Schuylkill County | |
| 1 | 06/11/2008 | | | |
| Jury Trial Held | | | | 1 |
| | | | Baldwin, William E. | |

Sequence numbers in left margin: 12, 13, 14, ₹15, ₹16, ₹17, DMIT, 18

[EXHIBIT 7.8]

AOPC 1221 - Rev 10/27/2008    EXHIBIT "A" - PAGE 3 OF 7 PAGES    Printed: 10/27/2008

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET



**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

**Court Case**

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 10 of 14

## ENTRIES                                                                 PGS    COV

| Sequence Number | CP Filed Date | Document Date | | |
|---|---|---|---|---|
| Service To | | Service By | Filed By | |
| Issue Date | Service Type | Status Date | Service Status | |

| | | | | |
|---|---|---|---|---|
| **18** 2 | 06/11/2008 | | | |
| Guilty Plea | | | Baldwin, William E. | |
| **19** 3 | 06/11/2008 | | 1 | |
| Pre-Sentence Investigation Ordered | | | Baldwin, William E. Statewide | |
| **19** 4 | 06/11/2008 | | | |
| Bail Set - Moll, Ronald Gene | | | Baldwin, William E. | |
| **20** 1 | 06/13/2008 | | 1 | |
| Evidence Index | | | Lukach, Stephen M. | |
| **21** 1 | 06/20/2008 | | 1 | X |
| Order to Appear for Sentencing | | | Baldwin, William E. | |
| **MIT** 2 | 06/20/2008 | | | |
| Sentencing Scheduled 8/12/2008  9:45AM | | | Court of Common Pleas - Schuylkill County | |
| **22** 1 | 07/30/2008 | | 1 | |
| Attachment Order | | | Baldwin, William E. | |
| **23** 1 | 08/11/2008 | | 2 | |
| Notice of Mandatory Minimum Sentence Case | | | Commonwealth Court of Pennsylvania | |

*EXHIBIT 7.A*

EXHIBIT "A" – PAGE 4 OF 7 PAGES

AOPC 1221 - Rev 10/27/2008                                                           Printed: 10/27/2008

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET



**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

**Court Case**

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 11 of 14

## ENTRIES

PGS    COV

| Sequence Number | CP Filed Date | Document Date | | |
| Service To | Service By | | Filed By | |
| Issue Date | Service Type | Status Date | Service Status | |
| 1 | 08/12/2008 | | | |
| Order - Sentence/Penalty Imposed | | | Baldwin, William E. | 1 |
| 2 | 08/12/2008 | | | |
| DL-21D to be Prepared | | | Lukach, Stephen M. | |
| 1 | 08/14/2008 | | | |
| Penalty Assessed | | | Court of Common Pleas - Schuylkill County | |
| 2 | 08/14/2008 | | | |
| Entry of Civil Judgment | | | Lukach, Stephen M. | |
| 3 | 08/14/2008 | | | |
| Entry of Civil Judgment | | | Lukach, Stephen M. | |
| 4 | 08/14/2008 | | | |
| Court Commitment State or County Correctional Institution | | | Lukach, Stephen M. | 5 |
| 1 | 08/26/2008 | | | |
| Entry of Appearance | | | Watkins, Kent D. | |
| 2 | 08/26/2008 | | | |
| Notice of Appeal to the Superior Court | | | Watkins, Kent D. | 12    X |
| 3 | 08/26/2008 | | | |
| Order Granting In Forma Pauperis | | | Lukach, Stephen M. | |

[EXHIBIT 7.10]

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET



**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

Court Case

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 12 of 14

## ENTRIES

PGS    COV

| Sequence Number | CP Filed Date | Document Date | |
|---|---|---|---|
| Service To | | Service By | Filed By |
| Issue Date | Service Type | Status Date | Service Status |

| 4 | 08/26/2008 | | |
|---|---|---|---|
| Proof of Service | | | |
| | | | Watkins, Kent D. |

26

| 5 | 08/26/2008 | | |
|---|---|---|---|
| Statement of Counsel | | | |
| | | | Watkins, Kent D. |

26

| 6 | 08/26/2008 | | |
|---|---|---|---|
| Affadavit of Defendant | | | |
| | | | Moll, Ronald Gene |

26

| 1 | 08/29/2008 | | |
|---|---|---|---|
| Order Pur to Pa.RAP 1925(b) | | | |
| | | | Baldwin, William E. |

27

| 1 | 09/03/2008 | | |
|---|---|---|---|
| Do Not Pursue Delinquency | | | |
| | | | Moll, Ronald Gene |

MIT

| 1 | 09/08/2008 | | |
|---|---|---|---|
| Rule 576 Notice of Appeal | | | 1 |
| Copy to Deft. of docket entry reflecting appeal filed. | | | |
| Schuylkill County District Attorney's Office | | | Moll, Ronald Gene |
| 09/08/2008 | Hand Delivered | | |
| Schuylkill County Public Defender's Office | | | |
| 09/09/2008 | Hand Delivered | | |
| Moll, Ronald Gene | | | |
| 09/10/2008 | Hand Delivered | | |

28

| 1 | 09/18/2008 | | |
|---|---|---|---|
| Defendant Transport Sheet | | [ EXHIBIT 7.12 ] | Schuylkill County Prison |

1

29

EXHIBIT "A" - PAGE 6 OF 7 PAGES

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET



**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

**Court Case**

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 13 of 14

## ENTRIES

PGS    COV

| Sequence Number | CP Filed Date | Document Date | | |
|---|---|---|---|---|
| Service To | | Service By | | Filed By |
| Issue Date | Service Type | Status Date | Service Status | |

| | | | | | |
|---|---|---|---|---|---|
| 30 | 1 | 09/22/2008 | | | |
| | Concise Statement of Errors Complained on Appeal | | | 2 | X |
| | | | Watkins, Kent D. | | |

| | | | | | |
|---|---|---|---|---|---|
| 31 | 1 | 10/01/2008 | | | |
| | OPinion Pursuant to Pa.R.A.P. 1925 | | | 4 | X |
| | | | Baldwin, William E. | | |

| | | | | | |
|---|---|---|---|---|---|
| 32 | 1 | 10/20/2008 | | | |
| | Transcript Filed | | | 142 | X |
| | | | Schuylkill County Stenographer's Office | | |

| | | | |
|---|---|---|---|
| 32 | 1 | 10/27/2008 | |
| | Transcript Certified | | |
| | Kimberely A. Miller, Official Court Reporter | | |
| | | Schuylkill County Stenographer's Office | |

| | | | |
|---|---|---|---|
| MIT | 2 | 10/27/2008 | |
| | List of Record Documents to Counsel | | |
| | Schuylkill County District Attorney's Office | | Lukach, Stephen M. |
| | 10/27/2008 | Hand Delivered | |
| | Watkins, Kent D. | | |
| | 10/27/2008 | Hand Delivered | |

EXHIBIT "A" — PAGE 7 OF 7 PAGES

## PAYMENT PLAN SUMMARY

| Payment Plan No | Payment Plan Freq. | Next Due Date | Active | Overdue Amt |
|---|---|---|---|---|
| Responsible Participant | | SID | Suspended | Next Due Amt |
| | | | | |
| 54-2004-P5025 | Monthly | 03/01/2005 | True | $220.00 |
| Moll, Ronald Gene | | | False | $5.00 |

Payment Plan History:  02/10/2005    Payment    $5.00

[EXHIBIT 7.12]

AOPC 1221 - Rev 10/27/2008                                                                Printed: 10/27/2008

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY

## SECURE DOCKET



**Docket Number: CP-54-CR-0000669-2007**

# CRIMINAL DOCKET

**Court Case**

SAME AS 1547 MDA 2008

Commonwealth of Pennsylvania

v.

Ronald Gene Moll

Page 14 of 14

## CASE FINANCIAL INFORMATION

Last Payment Date:                                                    Total of Last Payment: $0.00

| Moll, Ronald Gene<br>Defendant | Assessment | Payments | Adjustments | Non Monetary<br>Payments | Total |
|---|---|---|---|---|---|
| **Costs/Fees** | | | | | |
| Witness Fees (Schuylkill) | $9.76 | $0.00 | $0.00 | $0.00 | $9.76 |
| Witness Fees (Schuylkill) | $9.76 | $0.00 | $0.00 | $0.00 | $9.76 |
| Witness Fees (Schuylkill) | $9.76 | $0.00 | $0.00 | $0.00 | $9.76 |
| State Court Cost (Act 204 of 1976) | $11.50 | $0.00 | $0.00 | $0.00 | $11.50 |
| Commonwealth Cost - HB627 (Act 16 of 1992) | $17.30 | $0.00 | $0.00 | $0.00 | $17.30 |
| County Court Costs (Act 204 of 1976) | $25.20 | $0.00 | $0.00 | $0.00 | $25.20 |
| Crime Victims Compensation (Act 96 of 1984) | $35.00 | $0.00 | $0.00 | $0.00 | $35.00 |
| Domestic Violence Compensation (Act 44 of 1988) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| Victim Witness Services (Act 111 of 1998) | $25.00 | $0.00 | $0.00 | $0.00 | $25.00 |
| Firearm Education and Training Fund (158 of 1994) | $5.00 | $0.00 | $0.00 | $0.00 | $5.00 |
| Substance Abuse Education (Act 198 of 2002) | $50.00 | $0.00 | $0.00 | $0.00 | $50.00 |
| Substance Abuse Education (Act 198 of 2002) | $50.00 | $0.00 | $0.00 | $0.00 | $50.00 |
| JCP | $8.00 | $0.00 | $0.00 | $0.00 | $8.00 |
| ATJ | $2.00 | $0.00 | $0.00 | $0.00 | $2.00 |
| Clerks Fee (Schuylkill) | $5.00 | $0.00 | $0.00 | $0.00 | $5.00 |
| Prothonotary Satisfaction Fee (Schuylkill) | $27.00 | $0.00 | $0.00 | $0.00 | $27.00 |
| COC County Court Costs (Schuylkill) | $50.00 | $0.00 | $0.00 | $0.00 | $50.00 |
| DNA Fund Cost | $250.00 | $0.00 | $0.00 | $0.00 | $250.00 |
| Costs/Fees Totals: | $600.28 | $0.00 | $0.00 | $0.00 | $600.28 |
| Grand Totals: | $600.28 | $0.00 | $0.00 | $0.00 | $600.28 |

** - Indicates assessment is subrogated

EXHIBIT "B" - PAGE 7 OF 7 PAGES

[EXHIBIT 7.13]

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

2-6-06

# OFFICE OF THE PUBLIC DEFENDER
## OF SCHUYLKILL COUNTY

**Public Defenders**
Harry A. Rubright, Esq.
Paul Domalakes, Esq.
Karen Domalakes, Esq.
Christopher W. Hobbs, Esq.
Lora J. McDonald, Esq.
Christopher M. Reidlinger, Esq.
Andrea L. Thompson, Esq.
Frank R. Cori, Esq.
Kent D. Watkins, Esq.

*420 North Centre Street*
*Pottsville, Pennsylvania 17901*

*Telephone 570-628-1514 thru 628-1515*
*Fax No. 570-628-1512*

**Investigators**
Ronald G. Sverchek
Louise Howells
Lori Konitsky
Jessica Moran

2/6/2008

Mr. Ronald Moll
County Prison
Pottsville, PA 17901

**RE: Pending Criminal Case**

Dear Mr. Moll:

Attorney Watkins and I have received your recent correspondence. Attorney Watkins informed you at your last meeting that he would look into possibly filing a Motion to Suppress on your behalf. We have looked into this and you were arraigned on July 16, 2007 on these charges. The time frame to file a Suppression Motion is within 30 days of arraignment. Unfortunately, we are definitely outside of that time period. Enclosed for your review, please find all pre-trial discovery that we have received from the District Attorney. We are scheduled to pick a jury the end of February. I will see that you have appropriate clothing for this proceeding. If there is someone that I can call that can bring you your own clothing, please let me know as soon as possible. Please do not hesitate to contact me directly with any questions or concerns.

Very truly yours,

*Jessica Moran*

Jessica R. Moran,
Investigator

JRM
Cc: File

[EXHIBIT 8]

October 20, 2008

Michael J. Stine, Esquire
Kent D. Watkins, Esquire
Office of the Public Defender
    of Schuylkill County
420 North Centre Street, Suite 7
Pottsville, PA 17901

          RE:  Commonwealth of Pennsylvania v. Ronald Gene Moll
               No. 669 of 2007
               Criminal Jury Trial held on Wednesday, June 11, 2008
               before Honorable William E. Baldwin

Dear Mr. Watkins:

     The transcript of the jury trial in the above-captioned matter
was lodged on Monday, October 20, 2008, with the Clerk of Courts
Office of Schuylkill County.

     Pursuant to Pa.R.A.P. No. 1922, you are notified that if no
objections are made to the text of the transcript of the above matter
within five (5) days after this notice, the transcript will be
certified and filed as part of the record of the case.

                         Respectfully,

                         *Kimberly A. Miller*

                         Kimberly A. Miller
                         Official Court Reporter

/kam

cc:  Michael A. O'Pake, Esquire
          Assistant District Attorney

[EXHIBIT 9]

COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY, PA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA                No. 669 of 2007

v.

RONALD GENE MOLL,
                    Defendant                Jury Trial


BEFORE:   HONORABLE WILLIAM E. BALDWIN
          PRESIDENT JUDGE


APPEARANCES:   Michael A. O'Pake, Esquire
               Assistant District Attorney
                  for the Commonwealth

               Kent D. Watkins, Esquire
               Assistant Public Defender
                  for the Defendant


Courtroom No. 4
Schuylkill County Courthouse
Pottsville, PA 17901

Wednesday, June 11, 2008


# COPY


KIMBERLY A. MILLER
OFFICIAL COURT REPORTER
Schuylkill County Courthouse
401 North Second Street
Pottsville, Pennsylvania 17901
(570) 628-1328

[EXHIBIT 9.1]

Kimberly A. Miller, Official Court Reporter
Telephone No.: (570) 628-1328

1                    INDEX TO WITNESSES

2    FOR COMMONWEALTH:      DIRECT   CROSS   REDIRECT   RECROSS

3    Captain Jamie Gennarini 20       37       42        --

4    Patrolman
          Jason R. Hayes       42       47       --        --
5
     Rebecca Patrick,
6         on qualifications    52       --       --        --

7    Rebecca Patrick           57       61       --        --

8    Chief Matthew Nestor,
          on qualifications    64       79       --        --
9
     Chief Matthew Nestor      80       87       --        --
10
     Captain Jamie Gennarini,
11        recalled             95       --       --        --

12

13

     FOR DEFENDANT:        DIRECT   CROSS   REDIRECT   RECROSS
14
     Ronald Moll               98      103       --        --
15

16

17

18

19

20

21

22

23

24

25

[EXHIBIT 9.2]

3

## INDEX TO EXHIBITS

| COMMONWEALTH EXHIBITS: | MARKED | ADMITTED |
|---|---|---|
| No. 1 - photograph of an apartment | 22 | 97 |
| No. 2 - photograph of an apartment | 22 | 97 |
| No. 3 - evidence bag containing a handgun | 27 | 97 |
| No. 4 - handgun | 28 | 97 |
| No. 5 - evidence bag containing a magazine and loose bullets | 29 | 97 |
| No. 6 - blue and black case | 30 | 97 |
| No. 7 - evidence bag containing a box of .22 caliber rounds | 31 | 97 |
| No. 8 - evidence bag containing a key | 32 | 97 |
| No. 9 - plastic wall-mounted telephone | 33 | 97 |
| No. 10 - evidence bag containing a blue container | 35 | 97 |
| No. 11 - evidence bag containing two packets of methamphetamine, 9.7 grams | 36 | 97 |
| No. 12 - lab report prepared by Rebecca Patrick | 57 | 97 |
| No. 13 - box of Glad sandwich bags | 67 | 97 |
| No. 14 - evidence bag containing a black basket, twist ties, and a makeshift funnel | 68 | 97 |
| No. 15 - photograph of a razor blade | 69 | 97 |
| No. 16 - evidence bag containing a black leather case with a digital scale | 70 | 97 |
| No. 17 - black leather case with a digital scale | 71 | 97 |

[EXHIBIT 9.3]

1     (The following was held in Judge

2     Baldwin's chambers at 9:35 a.m.:)

3          MR. WATKINS:  Well, the first thing I

4     wanted to do was request a motion to sever the 18,

5     6105(a)(1), former -- prior convict not to own a

6     firearm charge from the drug charges.  And you're

7     going to --

8          THE COURT:  And you -- you didn't know

9     this at the time of the pre-trial conference, huh?

10          MR. WATKINS:  No.  At the time of the

11     pre-trial conference, Mr. Moll was set on getting

12     new counsel which he didn't do.

13          THE COURT:  But you were still the

14     attorney?

15          MR. WATKINS:  Yes, I was, yes.  No, I did

16     not do it.

17          THE COURT:  Why didn't you bring it up

18     then?

19          MR. WATKINS:  Two reasons.  First of all,

20     Mr. Moll had contacted Jim Kilker, given him money;

21     and Kilker had contacted me.  I thought Moll (sic)

22     would represent him.  Subsequent to that, I had a

23     sweetheart deal with this -- with the D.A.'s Office

24     which I thought -- I believed he was going to take

25     which he didn't.  So I didn't go through a motion,

[EXHIBIT 9.4]

1    and that's why I didn't do it.

2             THE COURT:  And what's your position?

3             MR. O'PAKE:  I understand, Your Honor,

4    the potential prejudicial value; but at this -- at

5    this late date that it's being raised now, I would

6    object to that motion.  I think if there's any

7    prejudice, I think it can be cured by proper

8    instructions to the jury.

9             THE COURT:  Why is it so late?  I mean

10   at what point did you decide to do this?  You picked

11   a jury last week.

12            MR. O'PAKE:  And, Your Honor, one other

13   point.  I'm -- I'm fairly certain that during jury

14   selection I told them of this charge.

15            THE COURT:  I would expect you probably

16   did.

17            MR. O'PAKE:  Oh, I'm certain I did.  I'm

18   certain I did, Your Honor.

19            MR. WATKINS:  I don't recall.

20            THE COURT:  Mr. Moll is worried about

21   people knowing that he has a prior conviction, and

22   yet he won't wear street clothes to the trial.

23            MR. WATKINS:  Mr. Moll has his own

24   thoughts on almost everything.

25            THE COURT:  He insists on sitting there

[EXHIBIT 9.5]

EXHIBIT 8

1    in front of the jury in prison garb.  I'll be back in

2    a minute.

3                    (The Judge left the conference at

4             9:38 a.m. and returned at 9:41 a.m.)

5                    THE COURT:  You know, these things

6    keep happening, there's going to be contempt citations

7    issued.  This is -- under the rules, you've waived

8    this by waiting this long to do it.

9                    MR. WATKINS:  I believe it's untimely,

10   Your Honor.  Yes, I agree.

11                   THE COURT:  And if he gets convicted,

12   then we'll probably come back with a PCRA 'cause you

13   didn't do what you were supposed to do.  I'm going to

14   grant the severance because we'd be here probably

15   again.  It should have been raised in an omnibus

16   motion, and there wasn't any question about who the

17   attorney was at that time.

18                   MR. WATKINS:  It was Bill Burke, Your

19   Honor.

20                   THE COURT:  Well, it should have been

21   done.

22                   MR. O'PAKE:  Your Honor, we need to

23   address with the jury the fact that I told them that

24   that charge was -- was -- was part of this case.

25                   THE COURT:  We'll just address it at the

[EXHIBIT 9.6]

1    Q.   And you found pellets, several containers of

2    pellets for the pellet gun, correct?

3    A.   Yes.

4    Q.   And an air rifle with a carrying case, two

5    air rifles with a carrying case?

6    A.   Yes.

7    Q.   And again, the air rifle wouldn't

8    particularly relate to drug trafficking 'cause it's

9    ineffectual?

10   A.   I agree with that.

11   Q.   Okay.  Now, what you had said, I believe, is

12   that you came into the apartment; and you and the

13   other police officers went into the bedroom, got Mr.

14   Moll; and then Officer Carado arrested him and took

15   him down to the station for the booking process --

16   A.   Yes.

17   Q.   -- within like about half an hour or so?

18   A.   Yes.

19   Q.   Okay.  And at that point, you had not found

20   anything in the apartment, correct?

21   A.   We hadn't even begun the search at that point

22   until Mr. Moll was taken out.

23   Q.   Okay.  So you arrested him and were going to

24   start booking him before you found anything; is that

25   correct?

[EXHIBIT 9.7]

EXIBIT 9,

1        MR. O'PAKE:  Objection, Your Honor.  May

2   we approach?

3            THE COURT:  Yes.

4            (The following discussion was held

5        at sidebar:)

6        MR. O'PAKE:  Your Honor, there was -- as

7   you know, there was a search warrant in this case; and

8   the search warrant was executed in response to two

9   controlled buys that were made by Mr. Moll, and I

10  believe -- or made from Mr. Moll.  I believe that

11  Chief Nestor was going -- is going to testify in

12  response to Mr. Watkins' question that he was

13  arrested and going to be booked pursuant to those

14  sales.

15          MR. WATKINS:  Is that what he was booked

16  for?

17          MR. O'PAKE:  I believe that's what his

18  response is going to be.

19          THE COURT:  Was he ever charged for

20  those?

21          MR. O'PAKE:  He was not charged with

22  those things, Your Honor.  I believe that they were

23  intending to do that but didn't do it because they

24  filed these charges instead because what they wanted

25  to do, Your Honor, my -- my understanding is that

[EXHIBIT 9.8]

Exibit 9-A

1    they wanted to keep the confidential informant

2    confidential; and that's why they didn't file those

3    charges.  But if they needed to, that's what they were

4    going to do.

5                    MR. WATKINS:  All right.  Well, I'll

6    withdraw the question.

7                    MR. O'PAKE:  Thank you, Your Honor.

8                    (The discussion at sidebar concluded.)

9                    MR. WATKINS:  I'll withdraw the question.

10   BY MR. WATKINS:

11       Q.   You -- did you test the bags for

12   fingerprints?

13       A.   No, I didn't.

14       Q.   Did you have them submitted to be tested for

15   fingerprints?

16       A.   The bags were submitted to test the material

17   inside of them, not for fingerprints.

18       Q.   Okay.  Was that little plastic case checked

19   for fingerprints?

20       A.   No.

21       Q.   What about for residue?

22       A.   No.

23       Q.   Was it -- can you use a field test or any of

24   the items in your package of investigative tools to

25   check items in the field for residue?

[EXHIBIT 9.9]

C E R T I F I C A T I O N

Transcript lodged

        I hereby certify that pursuant to Pa.R.A.P.
No. 1922, I have notified counsel for the parties that
if no objections are made to the text of this
transcript within five days after such notice, this
transcript will become part of the record.

                              _Kimberly A. Miller_
                              KIMBERLY A. MILLER
                              Official Court Reporter

              DATE:    _____October 20, 2008_____

Transcript certified

        I hereby certify that the evidence and
proceedings are contained fully and accurately in the
notes taken by me on the trial of the within cause and
that this transcript of such notes is true and
correct.

                         _____
                         KIMBERLY A. MILLER
                         Official Court Reporter

              DATE:   _____

[EXHIBIT 9.10]

**Appeal Docket Sheet**                                                                    **Superior Court of Pennsylvania**

**Docket Number:  1547 MDA 2008**

**Page 1 of 3**                                                             **Secure**

**November 2, 2009**

Commonwealth of Pennsylvania
v.
Ronald Gene Moll, Appellant

## CASE INFORMATION

Initiating Document:          Notice of Appeal IFP

Case Status:                  Active

Case Processing Status:       December 9, 2008          Awaiting Consideration

Journal Number:               J-S81037-09

Case Category:                Criminal                  Case Type(s):       Controlled Substance

## CONSOLIDATED CASES                                                  RELATED CASES

## SCHEDULED EVENT

Next Event Type: Receive Appellee Paperbooks                    Next Event Due Date: December 1, 2008

## COUNSEL INFORMATION

**Appellant        Moll, Ronald Gene**
Pro Se:          No          Appoint Counsel Status:
IFP Status:      Yes
         Attorney:      Watkins, Kent D.
         Bar No:        026001
         Address:       420 N Centre St Ste 7
                        Pottsville, PA 17901
         Phone No:      (570) 628-1515              Fax No:
         Phone No:      (570) 628-1514
         Receive Mail:  Yes
         Receive EMail: No          EMail Address: kwatkins@infionline.net

**Appellee        Commonwealth of Pennsylvania**
Pro Se:          No          Appoint Counsel Status:
IFP Status:
         Attorney:      Goodman, James Patrick
         Bar No:        069599
         Address:       Schuylkill County Districr Attorney's Office
                        401 N Second St
                        Pottsville, PA 17901
         Phone No:      (570) 628-1350              Fax No:
         Receive Mail:  No
         Receive EMail: No          EMail Address:

[EXHIBIT 10]

1:36 P.M.

**Appeal Docket Sheet**                                  **Superior Court of Pennsylvania**

**Docket Number: 1547 MDA 2008**

**Page 2 of 3**                                          **Secure**

**November 2, 2009**

### COUNSEL INFORMATION

**Appellee**      **Commonwealth of Pennsylvania**
Pro Se:           No              Appoint Counsel Status:
IFP Status:
          Attorney:    O'Pake, Michael Andrew
          Bar No:      053244
          Address:     Schuylkill Co District Attorney's Office
                       401 N Second St
                       Pottsville, PA 17901-2520
          Phone No:    (570) 628-1350            Fax No: (570) 628-1010
          Receive Mail: Yes
          Receive EMail: No        EMail Address:

### AGENCY/TRIAL COURT INFORMATION

Court Below:        Schuylkill County Court of Common Pleas
County:             Schuylkill                  Division:          Schuylkill County Criminal Division
Order Appealed From: August 12, 2008            Judicial District: 21
Documents Received: August 27, 2008             Notice of Appeal Filed: August 26, 2008
Order Type:         Judgment of Sentence

**Judge, Title:**   Baldwin, William E., President Judge
                    **Lower Court Docket No**                               **OTN**
                    CP-54-CR-0000669-2007                                   K4237575

### ORIGINAL RECORD CONTENT

| Original Record Item | Filed Date | Content Description |
|---|---|---|
| Part | October 28, 2008 | 1 |
| Transcripts | October 28, 2008 | 1 |
| Envelope of Exhibits | October 28, 2008 | 1 |
| Supplemental Part | November 13, 2008 | 1 |
| Supplemental Part | February 27, 2009 | 1 |

**Date of Remand of Record:**

### BRIEFING SCHEDULE

**Appellant**                                    **Appellee**
 Moll, Ronald Gene                                Commonwealth of Pennsylvania
 Brief                                            Brief
Due: December 8, 2008    Filed: December 8, 2008  Due: January 7, 2009    Filed: January 29, 2009

### DOCKET ENTRY

| Filed Date | Docket Entry | Participant Type | Filed By |
|---|---|---|---|
| **August 27, 2008** | **Notice of Appeal IFP Docketed** | | |
| | | Appellant | Moll, Ronald Gene |
| **August 29, 2008** | **Docketing Statement Exited (Criminal)** | | |
| | | | Middle District Filing Office |
| **September 17, 2008** | **Docketing Statement Received** | | |
| | | Appellant | Moll, Ronald Gene |

[EXHIBIT 10.1]

1:36-P.M.

**Appeal Docket Sheet**

**Superior Court of Pennsylvania**

**Docket Number: 1547 MDA 2008**

**Page 3 of 3**

**November 2, 2009**

**Secure**

### DOCKET ENTRY

| Filed Date | Docket Entry | Participant Type | Filed By |
|---|---|---|---|
| October 28, 2008 | **Trial Court Record Received** | | |
| | | | Lower Court or Agency |
| December 8, 2008 | **Application to Withdraw As Counsel** | | |
| | | Appellant | Watkins, Kent D. |
| | Document Name: Application to Withdraw As Counsel Watkins, Kent D. | | |
| December 8, 2008 | **Turner Letter Brief** | | |
| | | Appellant | Moll, Ronald Gene |
| December 9, 2008 | **Reply Letter(s) Printed** | | |
| | | | Middle District Filing Office |
| December 16, 2008 | **Reply Received (Submission)** | | |
| | | Appellant | Moll, Ronald Gene |
| January 29, 2009 | **Appellee's Brief Filed Late** | | |
| | | Appellee | Commonwealth of Pennsylvania |
| March 16, 2009 | **Application for Relief** | | |
| | | Appellant | Moll, Ronald Gene |
| | Comment: FILED BY PRO SE APLNT. | | |
| May 4, 2009 | **Order Denying Application for Relief** | | |
| | | | Per Curiam |
| | Comment: FILED BY PRO SE ON 3/16/09 | | |
| May 15, 2009 | **Application for Relief** | | |
| | | Appellant | Moll, Ronald Gene |
| | Comment: FILED AS MOTION TO PROCEED PRO SE. COURTSEY COPY TO DA & ATTY WATKINS | | |
| June 25, 2009 | **Order Denying Application for Relief** | | |
| | | | Per Curiam |
| | Comment: FILED 5/15/09. | | |

### SESSION INFORMATION

Journal Number:          J-S81037-09
Consideration Type:      Submitted on Briefs-Panel
Listed/Submitted Date: November 16, 2009

Panel Composition:
    The Honorable Correale F. Stevens          Judge
    The Honorable Joan Orie Melvin             Judge
    The Honorable James J. Fitzgerald, III     Justice of the Pennsylvania Supreme Court

[EXHIBIT 10.2]

IN THE SUPERIOR COURT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA     : NO. 1547 MDA 2008

                                 :

RONALD GENE MOLL,                :
                    Appellant

### PETITION FOR LEAVE TO WITHDRAW AS COUNSEL

Kent D. Watkins, Esq., submits this Application for Leave to Withdraw as Counsel for the following reasons:

1. Attorney Kent D. Watkins represented the defendant at trial.

2. Counsel filed a Notice of Appeal at request of defendant.

3. Upon review of the record, counsel has determined there are no grounds for appeal and the appeal is frivolous.

4. In the event the Court grants petition of counsel to withdraw, defendant has the right to proceed pro se or with the assistance of privately retained counsel.

5. Pursuant to this determination, counsel has sent a letter to the Court with a copy to the petitioner dated December 5, 2008, advising that counsel finds no merit to the appeal and is in fact frivolous pursuant to *Commonwealth v. Turner, 518 Pa. 491, 544 A.2d 927 (1988),* a copy of which is attached hereto, made a part hereof and marked Exhibit "A".

WHEREFORE, petitioner's counsel requests this Honorable Court to grant counsel's petition for leave to withdraw his appearance as counsel for the petitioner.

Respectfully submitted,

*Kent D Watkins*

Kent D. Watkins, Esq.
Attorney I.D. No. 26001

[EXHIBIT 11]

IN THE SUPERIOR COURT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA : NO. 1547 MDA 2008

:

RONALD GENE MOLL :

### CERTIFICATION OF SERVICE

I, Kent D. Watkins, Esq., hereby certify that on December 8, 2008, a copy of the application for leave to withdraw as counsel was sent by first class mail, postage pre-paid, to the following:

James P. Goodman, Esq.
District Attorney
401 N. Second St.
Pottsville, PA  17901

Mr. Ronald Moll
#HT-0026
SCI Mercer
801 Butler Pike
Mercer, PA  16137

Kent D. Watkins, Esq.
Attorney for Petitioner
Schuylkill County Public Defender's Office
420 N. Centre St., Suite 7
Pottsville, PA  17901
Attorney I.D. No. 26001

[EXHIBIT 11.1]

1-29-09

# OFFICE OF THE PUBLIC DEFENDER
# OF SCHUYLKILL COUNTY

*Public Defenders*
Michael J. Stine, Esq.
Paul Domalakes, Esq.
Karen Domalakes, Esq.
Christopher W. Hobbs, Esq.
Lora J. McDonald, Esq.
Christopher M. Reidlinger, Esq.
Andrea L. Thompson, Esq.
Kent D. Watkins, Esq.

*420 North Centre Street*
*Pottsville, Pennsylvania 17901*

*Telephone 570-628-1514 thru 628-1515*
*Fax No. 570-628-1512*

*Investigators*
Ronald G. Sverchek
Jessica Moran
Chrissey Dormer
Tyler Reese

01/29/09

Ronald Moll
HT-0026
801 Butler Pike
Mercer, PA 16137

**RE: Withdrawal**

Dear Mr. Moll:

　　Enclose is your discovery on your cases. Kent Watkins has withdrawn from your case.

Very truly yours,

Tyler Reese,
Investigator

TR
Cc: File

[EXHIBIT 12]

2-13-09

COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY—CRIMINAL

COMMONWEALTH OF PENNSYLVANIA    :    NO.   CR-669-2007
                    :
        vs.                   :
                    :
RONALD MOLL, HT0026           :
               Defendant    :

District Attorney - for the Commonwealth
Defendant - Pro se

ORDER OF COURT

BALDWIN, P.J.

AND NOW, 13th day of February, 2009, at 3:00 p.m., upon consideration of the

defendant's pro se Motion for Reconsideration and Modification, it is hereby ORDERED that

said motion is DENIED as timely, as the defendant was sentenced on August 12, 2008, and his

case is currently on appeal to the Superior Court, wherein he is represented by counsel.  To the

extent that defendant attempts to raise claims of ineffective representation by counsel, said

claims are premature.

BY THE COURT,

_____

[EXHIBIT 13]

IN THE SUPERIOR COURT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA         : NO. 1547 MDA 2008

                                    :

RONALD GENE MOLL,                    :

         Appellant

        MOTION FOR DISCONTINUANCE RULE(6523-B)


         AND NOW COMES THE DEFENDANT RONALD MOLL WHO HEREBY MOVES
THIS HONORABLE COURT IN THE ABOVE SAID PETITION FOR DISCONTINUANCE AND
STATES THE FOLLOWING IN SUPPORT THERE OF.


         ON JAN,29TH,THE DEFENDANT,S COUNSEL NOT ONLY FILE A BOILER
PLATE AURGUMENT WITH THIS COURT BUT IT WAS UNCOMPLIANT AND LATE (SEE EXHIBIT-A)
RENDERING COUNSEL INEFFECTIVE AND THE DEFEENDANTS BREIF LACKING SUBSTANCIAL
AURGUMENT,GIVING CAUSE TO THIS DEFENDANT FILING THE MOTION HEREIN FOR LEAVE
TO FILE A PCRA AND PRAYS THAT THIS HONORABLE COURT WILL FIND JUST CAUSE TO GRANT
THIS DEFENDANTS MOTION.


        MOTION FOR PRO SE STATUS (RULE 65240)
         THIS DEFENDANT MOVES THIS HONORABLE COURT TO GRANT THIS DEFENDANT
PROSE STATUS BASED UPON HIS ATTORNEYS WITHDRAW FROM THE CASE(SEE EXHIBIT B)
             WHERE FOR THIS DEFENDANT PRAYS THAT THIS HONORABLE COURT WILL FIND
JUST CAUSE TO GRANT THE ABOVE AFORESAID MOTION.


[EXHIBIT 14]



CERTIFICATE OF SERVICE

I RONALD MOLL DO HEREBY CERTIFY THAT ON MARCH 11,2009 I DID SERVE THE FOLLOWINGMOTION CONTAINED HEREIN TO THE OFFICES LISTED BELOW

OFFICE OF THE PROTHONOTARY
401 N SECOND ST
POTTSVILL PA  17901

OFFICE OF THE DISTRICT ATTORNEY
401 N SECOND ST
POTTSVILL PA   17901

HONORABLE JUDGE BALDWIN
401 N SECOND ST
POTTSVILL PA   17901

SUPERIOR COURT
OFFICE OF THE PROTHONOTARY
100 PINE ST STE 400
HARRISBURGH PA  17101

KENT WATKINS
420 N CENTRE ST
POTTSVILL PA 17901

DATED THIS /2 DAY OF MARCH 2009

_Ronald Moll_
RONALD MOLL

I RONALD MOLL DO HEREBY SWEAR THAT THE STATEMENTS MADE HEREIN ARE TRUE AND CORRECT AND IN ACCORDINANCE WITH 4904 (FALSIFICATION TO AUTHORITIES.

DATED THIS /2 DAY OF MARCH 2009

_Ronald Moll_
RONALD MOLL

[EXHIBIT 14.1]

Commonwealth of Pennsylvania    :    IN THE SUPERIOR COURT OF
                                    :         PENNSYLVANIA
                                    :
                                    :    (C.P. Schuylkill Co. No. CP-
             v.                    :     54-CR-0000669-2007)
                                    :
                                    :     No. 1547 MDA 2008
Ronald Gene Moll                      :     Filed: May 4 _____, 2009

## ORDER

As Appellant is represented by counsel, his *pro se* application for relief, filed March 16, 2009, is hereby **DENIED**. *See Commonwealth v. Ellis*, 626 A.2d 1137 (Pa. 1993) (disapproving of *pro se* filings by counseled appellants).

**Per Curiam**

TRUE COPY FROM RECORD
Attest: MAY 04 2009

_____
Prothonotary
Superior Court of PA - Middle District

[ EXHIBIT 15 ]

J. S81037/09

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P.65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RONALD GENE MOLL, | : | |
| | : | |
| Appellant | : | No. 1547 MDA 2008 |

Appeal from the Judgment of Sentence entered August 12, 2008
In the Court of Common Pleas of Schuylkill County
Criminal No.: CP-54-CR-0000669-2007

BEFORE:  STEVENS, DONOHUE, and FITZGERALD[*], JJ.

MEMORANDUM:                              FILED: April 14, 2010

Appellant, Ronald Gene Moll, appeals from the judgment of sentence

entered in the Schuylkill County Court of Common Pleas, following his

conviction for possession with the intent to distribute a controlled substance

("PWID").[1]  Appellant's counsel improperly filed a **Turner/Finley**[2] letter

seeking withdrawal of representation on direct appeal.[3]  Under the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(30).

[2] **Commonwealth v. Turner**, 518 Pa. 491, 494, 544 A.2d 927, 928 (1988);
**Commonwealth v. Finley**, 550 A.2d 213, 215 (Pa. Super. 1998) (*en banc*).

[3] It is well-settled that "**Anders** applies to direct appeals; **Turner/Finley**
applies to PCRA cases." **Commonwealth v. Wrecks**, 931 A.2d 717, 722
(Pa. Super. 2007).

[EXHIBIT 16]

J. S81037/09

circumstances, however, we grant counsel's application for leave to withdraw and affirm.

The trial court opinion accurately and thoroughly sets forth the relevant facts and procedural history, so we do not restate them here. **See** Trial Ct. Op. at 2-4.

As a prefatory matter, we examine whether counsel's purported **Turner/Finley** brief complies with the requirements of **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981), as clarified by the Pennsylvania Supreme Court in **Commonwealth v. Santiago**, ___ Pa. ___, 978 A.2d 349 (2009). "When faced with a purported **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw." **Commonwealth v. Wimbush**, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted).

> [W]e hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

[ EXHIBIT 16.1 ]

J. S81037/09

*Santiago*, ___ Pa. at ___, 978 A.2d at 361.[4]

Instantly, counsel's application for leave to withdraw and appellate brief comply with the technical requirements of **Anders**. **See id.** Counsel has cited a conscientious examination of the record and found the appeal frivolous. Further, the application and brief set forth the issue, "cite[] relevant legal authorities, reference[] appropriate portions in the record to aid our review" and conclude the appeal is frivolous. **See id.** Counsel also explains his reasons for concluding the appeal is frivolous, and explicitly states that the record does not reveal any other basis for appeal. **See id.**[5] The record also establishes Appellant was served a copy of the brief and application, which advised Appellant of the right to retain new counsel, or proceed *pro se* and raise additional issues to this Court. **See id.**

Having concluded counsel's petition and brief satisfy the technical **Anders** requirements, we conduct our own independent review to determine whether the appeal is wholly frivolous. Counsel raises one issue on appeal:

> Verdict contrary to law. Viewing the evidence admitted at trial, in the light most favorable to the Commonwealth, there is not sufficient evidence to find every element of the

---

[4] The **Santiago** Court specifically held that a "discussion of counsel's reasons for believing that the client's appeal is frivolous" must be included in "briefs in cases where the briefing notice is issued" after August 25, 2009. **Id.** at ___, 978 A.2d at 360, 361.

[5] Although counsel's brief and application to withdraw were filed prior to August 25, 2009, it complies with the **Santiago** requirements.

[ EXHIBIT 16.2 ]

- 3 -

J. S81037/09

> crime of possession with intent to deliver a controlled substance beyond a reasonable doubt.

Pa.R.A.P. 1925(b) Statement, filed 9/22/08.[6]

As a prefatory matter, we examine whether Appellant has properly preserved his challenge to the sufficiency of the evidence. This Court has stated:

> If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal.

**Commonwealth v. Williams**, 959 A.2d 1252, 1257 (Pa. Super. 2008) (citation and emphasis omitted). However, in a relatively straightforward, uncomplicated case, this Court should conduct the requested sufficiency review. **Commonwealth v. Laboy**, 594 Pa. 411, 415, 936 A.2d 1058, 1060 (2007) (*per curiam*). Instantly, although Appellant's Rule 1925(b) statement fails to identify the element or elements upon which the evidence was insufficient, this is a relatively uncomplicated case. **See Laboy**, 594 Pa. at 415, 936 A.2d at 1060; **Williams**, 959 A.2d at 1257.

Our scope of review is plenary and the standard of review is *de novo*. **Commonwealth v. Ratsamy**, 594 Pa. 176, 180, 934 A.2d 1233, 1235 (2007).

---

[6] Appellant has not filed an additional counseled or *pro se* brief.

*[Exhibit 16.3]*

- 4 -

J. S81037/09

> The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the fact-finder could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.
>
> In applying this test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

**Commonwealth v. Cassidy**, 668 A.2d 1143, 1144 (Pa. Super. 1995)

(citations and punctuation omitted).

With respect to a challenge to the sufficiency of evidence to support a conviction for possession with intent to distribute, it is well-settled that:

> The Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance. It is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver.
>
> In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substance. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver.
>
> Notably, if, when considering only the quantity of a controlled substance, it is not clear whether the substance

- 5 -    [EXHIBIT 16.4]

J. S81037/09

> is being used for personal consumption or distribution, it
> then becomes necessary to analyze other factors.

*Commonwealth v. Brown*, 904 A.2d 925, 931-32 (Pa. Super. 2006) (citation and quotation marks omitted). "Where . . . the contraband is not found on the accused's person, the Commonwealth must demonstrate he had constructive possession of the same, or that the individual had the ability and intent to exercise control or dominion over the substance." *Commonwealth v. Hutchinson*, 947 A.2d 800, 806 (Pa. Super. 2008), *appeal denied*, ___ Pa. ___, 980 A.2d 606 (2009). "Constructive possession may be established by the totality of the circumstances." *Commonwealth v. Bricker*, 882 A.2d 1008, 1014 (Pa. Super. 2005). The quantity of the controlled substance may also be dispositive of an intent to distribute. *Ratsamy*, 594 Pa. at 183, 934 A.2d at 1237.

After a thorough review of the parties' briefs, the certified record, the trial transcript, and the well-reasoned decision of the trial court, we affirm the judgment of sentence based on the trial court's opinion. *See* Trial Ct. Op. at 2-7 (discussing: police's and Appellant's testimony regarding recovery of 9.7 grams of methamphetamine and other drug paraphernalia; and Appellant's testimony explaining possession of drug paraphernalia and denial of knowledge of possession of drugs). The jury evaluated the credibility of all witnesses, *see Cassidy*, 668 A.2d at 1144, and after viewing the record in the light most favorable to the Commonwealth, a reasonable fact-finder could have concluded the Commonwealth established all of the elements of

- 6 -  EXHIBIT 16.5

J. S81037/09

possession with intent to distribute. **See generally Brown**, 904 A.2d at 931-32. Our independent review of the certified record reveals no other issue of arguable merit. Accordingly, we conclude the appeal is frivolous and grant counsel's application for leave to withdraw.

Judgment of sentence affirmed. Application for leave to withdraw granted.

Judge Stevens Concurs in the Result.


Judgment Entered.

Deputy Prothonotary

Date: April 14, 2010

[ EXHIBIT 16.6 ]

- 7 -

# No bail for chief in alleged cover-up

*Police terrorize minorities in Pa. town, lawyer claims*

THE ASSOCIATED PRESS

SHENANDOAH, Pa. — A Schuylkill County police chief ordered held without bail Wednesday on charges he tried to cover up the fatal beating of a Mexican immigrant by white teenagers was named in a 2006 lawsuit that claimed police beat to death a Hispanic teenager, then made it look like a suicide.

Police Chief Matthew Nestor was never charged, but the allegations included in the suit, in Tuesday's indictment and in other civil claims depict a police department with pervasive hostility to minorities and a penchant for using excessive force.

Police "acted as feudal warlords in this coal town community that people were afraid of," said attorney John Karoly, who represents the parents of 18-year-old David Vega in their federal lawsuit against the borough. Karoly said he wasn't suggesting police were abusive to everyone, "but I would say the pattern certainly starts to appear that minorities took the thrust of their abuse."

The suit names Nestor and Capt. Jamie Gennarini as defendants, as well as the borough of Shenandoah. The officers have denied wrongdoing. A civil trial is scheduled for summer.

Nestor, 33, and two other officers were charged Tuesday with orchestrating a cover-up as the FBI investigated the fatal attack on Luis Ramirez by a group of high school football players. Gennarini were indicted separately in a scheme to extort money from illegal gambling operations.

At a bail hearing yesterday in Wilkes-Barre, Nestor was ordered held until trial. Judge Malachy Mannion called Nestor "clearly, unequivocally, a serious danger to witnesses in this case."

The officers pleaded not guilty before a federal magistrate in Wilkes-Barre and the other two were released to home confinement.

A third federal indictment charges teenagers Brandon Piekarsky and Derrick Donchak with a hate crime in connection with the July 2008 attack on Ramirez, 25, an illegal immigrant from Mexico.



Shenandoah police Chief Matthew Nestor is charged in an alleged cover-up in the fatal beating of Mexican immigrant Luis Ramirez.

---

## SHENANDOAH: Four borough police officers resign

Continued from page 1

Derrick Donchak, 19, who pleaded not guilty to a hate crime charge in the death of the Mexican immigrant.

Judge Malachy Mannion ruled that Piekarsky and Donchak should remain locked up pending trial, calling them dangers to the community. He set a March trial date.

In May, a Schuylkill County jury acquitted the teens of the most serious state charges against them — including third-degree murder in Piekarsky's case — angering Hispanic leaders and civil-rights groups. Gov. Ed Rendell then asked the Justice Department to pursue civil rights charges.

The judge noted that it is extremely rare for the federal government to pursue charges in a case already decided in state court.

William Fetterhoff, Donchak's lawyer, denounced the federal charges as "tragic" and "extremely unjustified."

"In most civilized countries in the western world, people are only tried once" for the same crime, he said outside court.

James Swetz, Piekarsky's lawyer, said he plans to challenge the government's jurisdiction in the case.

Prosecutors have cast Ramirez as the victim of a gang of drunken white teens motivated by their dislike of their small coal town's burgeoning Hispanic population. Ramirez, a native of central Mexico, was in the United States illegally working at various jobs.

The confrontation began when a half-dozen high school football players were headed home from a block party in Shenandoah. They came across Ramirez and his 15-year-old girlfriend in a park and an argument broke out, followed by a melee.

Piekarsky was accused of delivering a fatal kick to Ramirez's head after he'd already been knocked unconscious by another teen, Colin Walsh, who pleaded guilty earlier this year in federal court to violating Ramirez's civil rights. Donchak took part in the fight and then conspired with Shenandoah police to cover up the crime, federal prosecutors said.

Piekarsky was acquitted in May by an all-white jury of third-degree murder and ethnic intimidation; Donchak was acquitted of aggravated assault and ethnic intimidation. Both were convicted of simple assault.

Noting that Donchak has spent 70 days of his state sentence in solitary confinement for breaking prison rules, Mannion told the teen: "It's not exactly appearing that you're getting the point here, and that's something that's hard to understand."

Piekarsky's mother, Tammy Piekarsky, dated one of the officers charged and is herself named as an unindicted co-conspirator for her role in the alleged cover-up.



Shenandoah Police Capt. Jamie Gennarini



Shenandoah Police Chief Matthew Nestor



Shenandoah Police Lt. William Moyer



Police Patrolman Jason Hayes

REPUBLICAN-HERALD PHOTOS BY JACQUELINE DORMER

EXHIBIT 17

6 •14 •15•
27264 03/
801 BUTLE
MERCER PA

# WEDNESDAY

## DECEMBER 30, 2009

# TIME NEWS

### SERVING THE PEOPLE OF CARBON, SCHUYLKILL, LEHIGH, MONROE & NORTHAMPTON COUNTIES

50¢ NEWS STAND
40¢ HOME DELIVERY

## PENNSYLVANIA

### 3 officers charged in fatal beating cover-up

SHENANDOAH — Federal prosecutors charged three police officers in a racially tense coal town with orchestrating a cover-up in the fatal beating of a Mexican immigrant by altering evidence or lying to the FBI in a case against two white high school football players.

A federal indictment announced Tuesday in Washington revealed close ties between the officers and defendants: One dated the mother of an accused player, and another had a son on the team.

The former athletes, ages 18 and 19, now are charged with a federal hate crime in the beating death of Luis Ramirez in a park on a night in July 2008 as they headed home from a party.

State prosecutors who tried to win murder or ethnic intimidation convictions against the athletes had

alleged that the attackers yelled racial epithets at Ramirez and that one gripped a piece of metal to give his punches more power.

1993

# 4 Shenandoah officer's resign

## REGIONAL

## COVER-UP: Feds charge two teens in hate crime death

Continued from page 1

SHENANDOAH, Pa. (AP) — Four northeastern Pennsylvania police officers who were arrested Dec. 15 on federal charges have resigned from their jobs.

The Shenandoah Borough Police Department has only three officers after the resignations of Chief Matthew Nestor, Capt. Jamie Hayes and Lt. William Moyer were accepted Tuesday night, State police are helping patrol the town.

Nestor, Moyer and Hayes are accused of orchestrating a cover-up in the fatal beating death of 25-year-old Luis Ramirez in Shenandoah in July of 2008.

On Dec. 22 in Wilkes-Barre, a federal judge denied bail for two teens, Brandon Piekarsky 18, and

Gennarini, were charged with extortion and civil rights violations in a separate case. The two are accused of extorting cash payoffs from illegal gambling operations and demanding a $2,000 payment from a local businessman in 2007 to release him from their custody.

The officers pleaded not guilty before a federal magistrate in Wilkes-Barre and were being held until a bail hearing Wednesday. Donchak and Piekarsky have an initial court appearance scheduled for Dec. 22.

Piekarsky's lawyer didn't return a call, and there was no lawyer listed for Donchak on the indictment.

State prosecutors who tried to win murder or ethnic intimidation convictions against the athletes had alleged that they yelled racial epithets at Ramirez and that one gripped a piece of metal to give his punches more power.

The federal indictment brought praise from those who had long argued that the case was blatantly a hate crime and were outraged when the teenagers won acquittal on the most serious charges.

"This is what our family, friends and ongoing supporters have prayed for," said Crystal Dillman, who

had two children with Ramirez and farm fields. His panics are believed to concern Educational Fund. "I truly believe in my heart that a 25-year-old native of the Luis can now rest in history knowing that violating the victim's civil rights and took the stand against Donchak and Piekarsky at their trial in the spring.

The confrontation began when a half-dozen high school football players were headed home from a block party in Shenandoah. They came across Ramirez and his girlfriend in a park, and a fight. Defense attorneys called Ramirez the aggressor. Prosecutors said he was kicked in the head while unconscious.

The teens gathered at after the attack ended, the indictment said. Piekarsky's mother showed up and told Hayes, her boyfriend, that she had been in contact with her boyfriend, that Ramirez's condition was deteriorating, it said.

Moyer separately went to the home of another teen present during the attack "and told him to talk to his friends about the version of events that would be communicated to the author-ties," the indictment said.

A borough official tried to get the police department

to recuse itself, but Nestor refused, the indictment said.

Donchak, Piekarsky and a third teen, Colin Walsh, were previously charged in state court with Ramirez's death. Walsh later pleaded guilty in federal court to violating the victim's civil rights and took the stand against Donchak and Piekarsky at their trial in the spring.

Piekarsky was acquitted in May by an all-white jury of third-degree murder and ethnic intimidation. Donchak was acquitted of aggravated assault and ethnic intimidation. Both were convicted of simple assault.

Piekarsky was sentenced in June to six to 23 months in prison, and Donchak was sentenced to seven to 23 months. They are serving their sentences at the Schuylkill County jail.

A fourth teen was found delinquent in juvenile court for his role in the beating.

If convicted on the hate crime charge, Piekarsky and Donchak face maximum sentences of life in prison. The most serious count against the officers, obstruction, carries a maximum sentence of 20 years in prison.

(Matthew reported from Wilkes-Barre. Associated Press writers Devlin Barrett in Washington and Patrick Walters in Philadelphia contributed to this report.)

See SHENANDOAH
on Page 2

# Local News

### Philadelphia & the Region

At the Please Touch Museum, every New Year's Eve brings

EXHIBIT L-17

*[EXHIBIT 17.2]*

# NATION/WORLD

E-Mail: jzbick@tnonline.com

# Shenandoah police face civil charges

## Lawsuit claims that police made the 2006 death of a Hispanic teen look like a suicide

**By MICHAEL RUBINKAM**
Associated Press Writer

SHENANDOAH, Pa. (AP) – A police chief ordered held without bail on charges he tried to cover up the fatal beating of a Mexican immigrant by white teenagers was named in a 2006 lawsuit that claimed police beat to death a Hispanic teenager, then made it look like a suicide.

Police Chief Matthew Nestor was never charged, but the allegations contained in the suit, in Tuesday's indictment and in other civil claims depict a police department with pervasive hostility to minorities and a penchant for using excessive force.

Police "acted as feudal warlords in this coal town community that people were afraid of," said attorney John Karoly, who represents the parents of 18-year-old David Vega in their federal lawsuit against the borough. Karoly said he wasn't suggesting police were abusive to everyone, "but I would say the pattern certainly starts to appear that minorities took the thrust of their abuse."

The suit names Nestor and Capt. Jamie Gennarini as defendants, as well as the borough of Shenandoah. The officers have denied wrongdoing. A civil trial is scheduled for next summer.

Nestor, 33, and two other officers were charged Tuesday with orchestrating a cover-up as the FBI investigated the fatal attack on Luis Ramirez by a group of high school football players. Gennarini and Nestor are indicted separately in a scheme to extort money from illegal gambling operations.

On Wednesday, Nestor was ordered held until trial at a bail hearing in Wilkes-Barre. Judge Malachy Mannion called Nestor "clearly, unequivocally a serious danger to witnesses in this case."

At the hearing, a federal prosecutor alleged that Nestor drove a cooperating witness in the extortion investigation to an isolated area and ordered him to strip down before returning him unharmed to his home.

The officers pleaded not guilty before a federal mag-

> ### "A big group of Spanish people moved into Shenandoah, and they didn't know how to react to that. Were they fair to us? No. They're fair to their own kind. The outsider always had to pay."
>
> **CARLOS VEGA,**
> VICTIM'S FATHER

istrate in Wilkes-Barre and Gennarini and the other two officers were released to home confinement.

A third federal indictment charges teenagers Brandon Piekarsky and Derrick Donchak with a hate crime in connection with the July 2008 attack on Ramirez, 25, an illegal immigrant from Mexico. Donchak and Piekarsky have an initial court appearance scheduled for Tuesday. Their lawyers did not return phone messages Wednesday.

Donchak and Piekarsky were previously charged in state court with Ramirez's death.

Piekarsky was acquitted in May by an all-white jury of third-degree murder and ethnic intimidation; Donchak was acquitted of aggravated assault and ethnic intimidation. Both were convicted of simple assault. Piekarsky is scheduled to be released from jail Thursday. Donchak remains locked up.

Early in the Ramirez investigation, Schuylkill County prosecutors determined that they had a serious problem with the Shenandoah police, District Attorney James Goodman said Wednesday. No Shenandoah officers were called to testify at the trial.

"We determined the police did not do their job and they were partly involved with this cover-up," said Goodman, adding that he asked the Justice Department to investigate the force.

"It was pretty troubling and it obviously caused problems with the prosecution in the case and made the case more difficult," Goodman said.

Police in this blue-collar town of 5,000, about 80 miles northwest of Philadelphia, face other accusations of wrongdoing.

Gennarini and Capt. Raymond Nestor – the father of the police chief – arrested David Vega at his home shortly before 8:55 p.m. on Nov. 28, 2004, while responding to a report of a domestic dispute, according to court documents.

"While in police custody ... Vega was beaten to death and then hung from the bars of a holding cell to make it appear as if he had committed suicide," the lawsuit said.

Vega was pronounced dead at 10:50 p.m.

His father, Carlos Vega, said Wednesday that he had no doubt what happened to his son. Vega, a retired

chef who moved to Shenandoah 19 years ago, said he's afraid to leave his own house for fear of the police.

"A big group of Spanish people moved into Shenandoah, and they didn't know how to react to that," said Vega, who was born in New York and is of Puerto Rican descent.

"Were they fair to us? No. They're fair to their own kind. The outsider always had to pay."

An autopsy conducted by the county coroner determined Vega's son committed suicide, but Karoly said the coroner accepted Matthew Nestor's explanation that Vega's bruises had come earlier as he resisted arrest. A second autopsy arranged by the family confirmed Vega "suffered extensive, massive injuries consistent with a profound beating. ... The defendant did not die of hanging," the suit said.

Vega had a new girlfriend and was meeting with military recruiters about earning money for college, Karoly said.

"He had everything to live for," he said. "The kid was on top of the world and had no reason to commit suicide."

Nestor's attorney insists otherwise, writing in court papers: "The only credible independent evidence to date establishes that David Vega committed suicide."

Nestor faces yet another lawsuit, this one filed by a Shenandoah man arrested by the chief and another officer on a drug charge March 11.

David Murphy Sr., who is also represented by Karoly, claims Nestor and another officer made him swallow his prescription blood thinner at the police station, then refused to allow him to take his evening dose. Nestor also punched Murphy in the back, where he had recently undergone spinal fusion surgery, the lawsuit said.

The officers left Murphy in a holding cell overnight. He "started to experience severe pain in his chest and arm ... but there was no one in the station to hear his cries for help," the suit said. He passed out; Karoly said he suffered a heart attack. He spent four days in a hospital.

Murphy, who is black, claims Nestor threatened to kill him if he filed suit.

The chief told Murphy he would not "make it out of the Shenandoah jail alive ... that (he) would end up like that Mexican who 'hung' himself," the suit said.

*Associated Press writer Kathy Matheson in Wilkes-Barre, Pa., and AP researcher Rhonda Shafner in New York contributed to this report.*



AP PHOTO

**This file photo shows Brandon Piekarsky, one of the suspects in the 2008 fatal beating case of Luis Ramirez, being escorted into the Schuylkill County Courthouse in Pottsville. On Wednesday, charges continued to pile up against the Shenandoah police department as new allegations of another beating death surfaced in a civil lawsuit.**



[EXHIBIT 17.3]



**TIMES**

6 *14 *158 *************ALL FOR ADC 150
27264 03/20/2010
801 BUTLER PIKE
MERCER PA 16137 5653

SERVING...
LEHIGH, MONROE & NORTHAMPTON

# Cover-up in Shenandoah

## Feds charge two teens in hate crime death; four police officers also face federal charges

By MICHAEL RUBINKAM
and KATHY MATHESON
Associated Press Writers

SHENANDOAH, Pa. (AP) – After taking part in a fight that left a Mexican immigrant mortally wounded on the street, teenagers Brandon Piekarsky and Derrick Donchak fled. They didn't get very far before running into two police officers responding to a 911 call about the assault.

These were no ordinary officers. Patrolman Jason Hayes dated Piekarsky's mother, and Lt. William Moyer's son played with Piekarsky on the high school football team. Their commanding officer, Chief Matthew Nestor, was a friend of Piekarsky's mother and even vacationed with her.

Rather than place the popular white football players under arrest, the officers let them go – beginning a cover-up in their racially tense coal town, federal prosecutors allege.

The Department of Justice said Tuesday that Hayes, Moyer and Nestor have been indicted on obstruction charges for trying to "impede, obstruct and influence the investigation" into the July 2008 beating death of Luis Ramirez by tampering with evidence and witnesses or lying to the FBI.

The former athletes, who were acquitted of the most serious state charges against them in May, are charged with a federal hate crime for attacking Ramirez in a park as they headed home from a party, the Department of Justice said.

The police chief and his second in command, Jamie
See **COVER-UP** on Page 2





REPUBLICAN-HERALD PHOTOS BY JACQUELINE DORMER
**Brandon J. Piekarsky**

**Derrick M. Donchak**



**Shenandoah Police Chief Matthew Nestor**



**Shenandoah Police Capt. Jamie Gennarini**

**Police Patrolman Jason Hayes**



**Shenandoah Police Lt. William Moyer**

# Corruption rampant in nor

ASSOCIATED PRESS

WILKES-BARRE – After a six-year run in the NFL, Greg Skrepenak came home to Pennsylvania and parlayed his name recognition and hometown popularity into a seat on the Luzerne County Board of Commissioners.

He'd campaigned as a reformer. It turns out he was anything but: Prosecutors charged him last month with accepting $5,000 in gifts from a developer seeking public financing of a condominium project. He is scheduled to plead guilty on Tuesday.

Another day, another fallen politician in the coal fields of northeastern Pennsylvania, where FBI agents and federal prosecutors have spent the past year rooting out government corruption in a hardscrabble region known for its pay-to-play politics, suspicion of outsiders and resistance to political change.

Twenty-three people in Luzerne County – including a school superintendent, three county judges, four courthouse officials and five school board members – have been charged so far in a variety of unrelated schemes.

In the most egregious abuse of the public's trust, two judges are charged with taking $2.8 million in kickbacks to place youth offenders in for-profit detention facilities – a scandal known as "kids for cash." While thousands of juvenile convictions have been dismissed by the state Supreme Court, youth advocates say the lives of countless children and their families were ruined.

The ongoing federal corruption probe has sent tremors through an insular political culture where graft, patronage and nepotism have been accepted practice since the golden age of anthracite coal a century ago – when waves of European immigrants arrived in this mountainous region 100 miles north of Philadelphia to work in mines, breweries and railroads. Their descendants still live in the tiny patch towns and tightly packed houses built by long-defunct coal companies.

Most of the charges filed over the past year involve public officials accepting cash or gifts – a $1,500 suit, for example – in exchange for helping contractors win government work or some other benefit. A few officials are charged with the outright theft of taxpayer dollars. The FBI also is looking into allegations that candidates for public school teaching positions paid bribes to school board members to land jobs.

"Things have been like this for so long that I don't think many people see a lot of wrong in what they've done," said Skrepenak, 39, a former offensive lineman who played for the Oakland Raiders and Carolina Panthers in the 1990s.

"I believe any elected official of the last five years is at risk" of prosecution, he added. "I don't think many of them truly know what they can and cannot do."

Few in the coal region are surprised. Machine-style politics has flourished here for decades; government jobs and other taxpayer-funded goodies are often doled out to the politically connected, not just in Luzerne County but throughout the area. Federal prosecutors, in fact, have set their sights on the courthouse in neighboring Lackawanna County, and indictments are widely expected.

To the southwest, meanwhile, the feds are investigating a different kind of corruption, charging police officers in the small former mining town of Shenandoah with plotting to cover up the fatal beating of a Mexican immigrant and, in a separate case, with shaking down illegal gambling rackets. The Mob, under the Bufalino crime family, once had a corruption foothold here.

## Backroom dealing

Until recently, there's been little outside scrutiny of the backroom dealmaking.

"There's no question this is an area that traditionally has not seen a lot of public corruption investigations, and now there are several big ones going on," said FBI spokesman J.J. Klaver. "It is a major undertaking, but we seem to be getting it done, so that's a good thing."

The kids-for-cash scandal, the first to break, remains by the far the biggest and most shocking. On Jan. 26, 2009, federal prosecutors announced charges against judges Mark Ciavarella Jr. and Michael Conahan, describing a scheme in which Conahan forced closure of the county-owned juvenile detention center in 2002 and reached an agreement with a for-profit company co-owned by his friend, a prominent local attorney, to send youth offenders to its new facility outside Wilkes-Barre.

Ciavarella, who presided over juvenile court, sent youths – many of them accused of minor offenses – to the PA Child Care LLC detention center and to a

"I DO THINK (POLITICS IS) A RELATIVELY NOBLE PROFESSION, BUT THERE'S JUST SO MUCH TEMPTATION AROUND IT AND SO MANY PEOPLE TRYING TO GET THEIR HANDS ON WHAT YOU HAVE, OR WHAT YOU CONTROL FOR THAT BRIEF TIME, THAT YOU'RE A TARGET."
GREG SKREPENAK, FORMER LUZERNE COUNTY COMMISSIONER

sister facility in Western Pennsylvania while he was taking payments, running his courtroom with "complete disregard for the constitutional rights of the juveniles," in the words of the Supreme Court.

He once told a 14-year-old offender to count the number of birds sitting on a ledge outside the courtroom – then gave the teenager six months in detention, one for each bird, according to a recent civil suit.

Yet no one in Luzerne County blew the whistle on Ciavarella's courtroom behavior. Not court staff, not defense lawyers or prosecutors. As a result, juveniles typically got hearings that lasted only a few minutes, and many of them were pressured to waive their right to lawyers.

"This is not just a failure caused by two or three corrupt judges. This is a whole collapse of government," said John Cleland, a state appellate judge who chairs a panel investigating the scandal. "It's a cultural phenomenon that's inexplicable."

Youth advocates say lawyers who regularly appeared in Ciavarella's courtroom but kept quiet about the abuses should face discipline for failing to report the judge.

Testifying before Cleland's panel last week, Robert Schwartz, executive director of the Philadelphia-based Juvenile Law Center, called Luzerne County a "toxic combination" of private enterprise, corrupt judges and indifferent lawyers and probation officers.

"It was the Love Canal of juvenile courts," he said, a place where children were "fast-tracked to oblivion."

The scandal also revealed shortcomings in state supervi-

[EXHIBIT 17.4]

# theastern Pa. coal country

sion of the courts. The Juvenile Law Center alerted the Supreme Court two years ago that huge numbers of children in Luzerne County were being sent to detention – almost double the state average – yet the court refused to intervene until Conahan and Ciavarella were charged.

The judges, who have pleaded not guilty, await trial on racketeering charges that could send them to prison for the rest of their lives. They also face at least two civil suits filed on behalf of hundreds of children and their parents.

**Staying in control**

While residents have long complained about corruption in Luzerne County government, they've had little incentive to change it. As coal mines and garment factories shut down, local government expanded dramatically, offering stable employment and good benefits – if low pay – to those lucky enough to get the jobs. Party bosses used patronage to maintain and enhance their power.

"There's this sense of, 'Well, if my guy gets in, then I will get a job or a family member gets a job.' There's a sense that your life can change … with an election outcome," said Tom Baldino, a political science professor at Wilkes University in Wilkes-Barre. "So there is a dependency on the part of some families to have their lives revolve around who's in control of the courthouse."

Skrepenak and his running mate, both in their early 30s when they were elected in 2003, seemed to offer something new. Affectionately called "Skrep," the big man (6-foot-7, 325 pounds) had been an honor student in his native Wilkes-Barre, a two-time All-American and Big Ten lineman of the year at the University of Michigan, and an NFL starter who didn't forget his roots – both grandfathers worked the mines, and one died there. Skrepenak could have lived anywhere following his pro career but chose to raise his family back home in northeastern Pennsylvania, where he started a charity, focused his campaign agenda on combating drug abuse and crime, and easily won election to the powerful commission post.

His status as a pro football player meant he didn't have to get elected the usual way, by courting Democratic party leaders. But Skrepenak failed to live to his promise, becoming em-



ASSOCIATED PRESS

Former county Commissioner Greg Skrepenak talks with the media at Luzerne County Courthouse in Wilkes-Barre. Last month, prosecutors charged the former National Football League player with accepting $5,000 in gifts from a developer seeking public financing of a condominium project. He is scheduled to plead guilty Tuesday.

broiled in one controversy after another after taking office. He resigned Dec. 17, one day before agreeing to plead guilty to a single count of corruption.

Now, as he prepares to enter federal prison – he faces up to 10 years but is likely to get 33 to 41 months – Skrepenak ponders where he went wrong. He said he trusted people he shouldn't have.

"I do think (politics is) a relatively noble profession, but there's just so much temptation around it and so many people trying to get their hands on what you have, or what you control for that brief time, that you're a target," Skrepenak said.

"It's a position I put myself in," he added. "I failed to see what

was going on, I failed to understand what was going on, and now I'm facing stiff legal challenges that will have a profound effect on me for the rest of my life … Ignorance is not a viable defense, and unfortunately I was ignorant in many ways."

Skrepenak said he hopes other local politicians learn from his mistakes. Whether they will is an open question.

In Wilkes-Barre, the county seat, school board member Frank Pizzella Jr. was charged by federal prosecutors in September with participating in a 2004 scheme to sell a teaching job.

In December, colleagues voted 6-1 to keep him on as board president.

*[illegible handwritten/scanned fragment]*
earing and
u may do so

[EXHIBIT 17.5]

NOV 29 2001

REFERENCE

# COURT RULES

## SUPREME COURT OF PENNSYLVANIA

### IN RE: EXHAUSTION OF STATE REMEDIES
### IN CRIMINAL AND POST-CONVICTION
### RELIEF CASES

Dated May 9, 2000

No. 218 Judicial Administration Docket No. 1

O R D E R

**PER CURIAM:**

AND NOW, this 9th day of May, 2000, we hereby recognize that the Superior Court of Pennsylvania reviews criminal as well as civil appeals. Further, review of a final order of the Superior Court is not a matter of right, but of sound judicial discretion, and an appeal to this Court will only be allowed when there are special and important reasons therefor. Pa.R.A.P. 1114. Further, we hereby recognize that criminal and post-conviction relief litigants have petitioned and do routinely petition this Court for allowance of appeal upon the Superior Court's denial of relief in order to exhaust all available state remedies for purposes of federal habeas corpus relief.

In recognition of the above, we hereby declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error. When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief.

This Order shall be effective immediately.

STATE REGIONAL CORRECTIONAL FACILITY
801 BUTLER PIKE
MERCER, PA 16137    CXIV

[ EXHIBIT 18 ]

FED-CS-15 - 266 F.3d 218, Wenger v. Frank, (C.A.3 (Pa.) 2001)

------------ Excerpt from page 266 F.3d 224  follows ------------
> [6]> [7] Wenger maintains that discretionary review by the Pennsylvania Supreme Court is not part of the ordinary process of appellate review by virtue of Order 218, which was issued by the Pennsylvania Supreme Court in May 2000.  That order provides as follows:

AND NOW, this 9th day of May, 2000, we hereby recognize that the Superior Court of Pennsylvania reviews criminal as well as civil appeals.  Further, review of a final order of the Superior Court is not a matter of right, but of sound judicial discretion, and an appeal to this Court will only be allowed when there are special and important reasons therefor.  > Pa.R.A.P. 1114.  Further, we hereby recognize that criminal and post-conviction relief litigants have petitioned and do routinely petition this Court for allowance of appeal upon the Superior Court's denial of relief in order to exhaust all available state remedies for purposes of federal habeas corpus relief.

In recognition of the above, we hereby declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available

------------ Excerpt from page 266 F.3d 225  follows ------------
state remedies respecting a claim of error.  When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief.

This Order shall be effective immediately.

   This Order was in all likelihood prompted by Justice Souter's concurring opinion in O'Sullivan.  In that opinion, Justice Souter stated that he understood O'Sullivan "to have left open the question ... whether [the Court] should construe the exhaustion doctrine to force a State, in effect, to rule on discretionary review applications when the State has made it plain that it does not wish to require such applications before its petitioners may seek federal habeas relief."  > 526 U.S. at 849, 119 S.Ct. 1728 (Souter, J., concurring).  Justice Souter went on to note the example of an order issued by the Supreme Court of South Carolina that is similar to the Pennsylvania Supreme Court's Order 218.  Id.  Wenger interprets the Pennsylvania Supreme Court's Order No. 218 to mean that he exhausted his ineffective assistance of counsel claims when he raised those claims in the Court of Common Pleas and the Superior Court in his first petition for state collateral review and that his failure fairly to present those claims to the Pennsylvania Supreme Court is immaterial for exhaustion purposes.

   After hearing oral argument in this case, we requested the parties to provide supplemental submissions addressing the question whether Order 218 "applies to a case in which the time for filing a petition for discretionary review expired prior to the date of the order."  We also invited the Attorney General of Pennsylvania to provide an amicus submission on this question.  In that submission, the Attorney General contended that Order 218 should not be interpreted as having a retroactive effect and also that the Order was issued in violation of the state constitution.  The Attorney General argued that the Order purports to alter the state supreme court's jurisdiction but that under the state constitution the state supreme court may not alter the jurisdiction of any court.  > Pa. Const. art. V, § 10(c).

   Although it will undoubtedly be necessary for our court to address the broader question whether the filing of a petition for discretionary review with the Pennsylvania Supreme Court is now "part of the ordinary appellate review procedure in the state," we find it unnecessary to reach that issue here.  In this case, we find it sufficient to hold that Order 218 did not retroactively alter the nature of "the ordinary appellate review procedure" in the Commonwealth.  We reach this conclusion for three reasons.

   First, we believe that the language of the Order, although not in itself conclusive, suggests that the Order was intended to be prospective only.  The Order states that the court "hereby declare[s]" that, in appeals from criminal convictions or post-conviction relief matters, "a litigant shall not be required to petition for rehearing or allowance of appeal."  Order No. 218, supra (emphasis added).  The Order also states that it is "effective immediately."  On the whole, this language seems to us to be forward-looking.

   Second, what we understand to be the primary purpose of this Order and others like it would not be served by retroactive application.  Orders of this type are based on the view that requiring state prisoners to file petitions for discretionary review in order to pave the way for federal habeas petitions does little good (because so few petitions for discretionary review are

------------ Excerpt from page 266 F.3d 226  follows ------------
granted) but imposes a burden on overworked state supreme courts and produces pointless delay.  See > O'Sullivan, 526 U.S. at 849, 119 S.Ct. 1728 (Souter, J., concurring); > id. at 863, 119 S.Ct.

[EXHIBIT 19]

1728 (Breyer, J., dissenting).  In his dissent in O'Sullivan, Justice Breyer cited the low percentage of petitions granted by several state supreme courts.  > Id. at 863, 119 S.Ct. 1728 (Breyer, J., dissenting).  He then observed:

On the majority's view, these courts must now consider additional petitions for review of criminal cases, which petitions will contain many claims raised only to preserve a right to pursue those claims in federal habeas proceedings.  The result will add to the burdens of already overburdened state courts and delay further a criminal process that is often criticized for too much delay.

> Id. at 863, 119 S.Ct. 1728.   He expressed "optimism," however, because of the suggestion in Justice Souter's concurrence that a state could, if it desired, eliminate the requirement of having such claims raised in petitions for discretionary review to the state's highest court.  > Id. at 864, 119 S.Ct. 1728.   The interests cited by Justice Breyer--relieving the burden on state supreme courts and preventing delay--would obviously not be served by retroactive application of Order 218.  See > Mattis v. Vaughn, 128 F.Supp.2d 249, 262 (E.D.Pa.2001).  Any petitions filed prior to that Order solely for the purpose of satisfying the federal exhaustion requirement still had to be passed upon by the state supreme court, and federal habeas review was still delayed until that was done.

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

[EXHIBIT 19.1]